New Jersey Insurance Co. v. Meeker.

. THE NEW JERSEY INSURANCE COMPANY v. JOHN H.
MEEKER ET AL.

An action of covenant will, by force of the statute of this state, lie against
heirs and devisees for the breach of a covenant against encumbrances
contained in a conveyance of the ancestor. .

In covenant.   On *demurrer* to the declaration.

This action is brought against the defendants, as heirs and
devisees of Samuel Meeker, deceased, under the act entitled,
*" An act for the relief of creditors against heirs and devisees,"*
passed March 7th, 1797, (*Nix. Dig.* 380,) to recover dam-
ages or compensation for the breach of a covenant against
encumbrances, contained in an indenture of conveyance, dated
March 26th, 1861, made by and between the said Samuel
Meeker, in his lifetime, of the first part, and the plaintiffs
herein, of the second part, for lands in the city of Newark.

The declaration alleges, as a breach, the existence of an
inchoate right of dower in Martha A. Halsted (one of the
defendants herein,) then the wife of Oliver S. Halsted, Jr.,
a prior owner of the premises, which inchoate right of dower
having become complete, by the death of said Oliver S. Hal-
sted, Jr., in July, 1871, the said Martha A. Halsted, in an
action of dower, *unde nihil habet,* commenced in this court,
against the present plaintiffs, recovered, on the 25th day of
February, 1873, her seizin of the one-third part of said prem-
ises (which was duly delivered to her by the sheriff,) and the
sum of $1366.46, for her damages and costs.

Four of the defendants, viz.: John H. Meeker, Samuel A.
Meeker, Charles H. Meeker, and the said Martha A. Halsted,
are children and heirs of said Samuel Meeker, deceased. All
the defendants are his devisees, excepting two, who are hus-
bands respectively of two of the devisees.

The defendants, who are heirs-at-law, have filed *demurrers*
to the declaration, and the plaintiffs have filed a *joinder.*

For the demurrants, *L. McCarter* and *Williamson.*

This suit is in covenant. The declaration declares against John H., Samuel A. Meeker and others, heirs and devisees of Samuel Meeker, deceased.

The demurrer is for John H., Samuel A. and Charles H. Meeker.

The action is founded on the statute entitled, "An act for the relief of creditors against heirs and devisees." *Nix. Dig.* 380.

The question here is not whether the devisees are liable, but whether they are liable in this form of action.

Will covenant lie against the devisees? If so, it must be by force of the statute, because the covenant sued on "is for his heirs, executors and assigns," not for his *devisees.*

By the statute of 3*d. W. & M. C.* 14, *Chitty's Stat., Vol. I, part II, p.* 1128, *Jefferson* v. *Morton and others,* 2 *Saund., p.* 8, debt only would lie; see case of *Wilson* v. *Knubley,* 7 *East.* 128. This was in 1806, *Plasket, Executor of, &c.,* v. *Beeby,* 4 *East.* 485; *Farley* v. *Briant,* 3 *A. & E.* 839; see *Rawle on Cov. for Title* 597.

The case of *Farley* v. *Briant, in* 3 *A. & E.,* held that that this statute *applied only where* a *debt* in the ordinary sense of the word, existed between the parties in the lifetime of the debtor, and, therefore, that an action of debt did not lie against the heirs and devisees of a surety for breaches of covenant which did not occur in his lifetime, even though the damages upon the occurrence of such breach were liquidated so that in form they might be sued for in an action of debt.

See also the case of *Hunting* v. *Sheldrake and others,* 9 *M. & W.* 256, as to the construction of this statute, and *Cooper* v. *Cresswell,* 2 *Law Rep.* (*Equity*) 106. Afterward on appeal, same case, in 2 *Chancery Appeal Cases* 112, was reversed, but on an other ground.

To remedy this defect, the statute of W. & M. was afterward amended; see notes to the case of *Jefferson* v. *Morton,* 2 *Saund.* 8. The recital is as follows:

"For the means that such creditors may be enabled to recover UPON SUCH BONDS, COVENANTS AND OTHER SPECIALTIES, be it further enacted, that in cases before mentioned every such creditor shall and may have and maintain his, her and their action and actions of debt or COVENANT upon the said bonds, covenants and specialties against the heir and heirs-at-law of such obligor or obligors, *covenantor* and covenantors, and such *devisee* and devisees, or the. *devisee or devisees of such first mentioned* devisee *or devisees* jointly, by virtue of this act."

By this amendment the remedy was extended to actions of covenant.

Our statute is substantially a copy of the statute of W. & M. before the amendment by which that act was extended to actions of covenant; Chief Justice Ewing, in the case of *Hatfield* v. *Jaques*, 5 *Halst.* 264, says that the statute of William and Mary was adopted in the revision of our laws by Judge Paterson, in very nearly the words of the original.

It is clear that prior to the statute of W. & M., neither debt nor covenant would lie against the devisee—the remedy against him was first given by that statute.

The first section of our statute provides when the heir shall be sued alone, and when the heir and devisee jointly.

The 4th section provides that devisees made liable by this act shall be liable in the same manner as the heirs *by force of this act*.

This language naturally suggests the inquiry—in what manner are the heirs made liable by this act?

The title of our act is "An act for the relief of creditors *against heirs and devisees, whether by simple contract or specialty.*"

The 1st section says, "all and every *creditor* and *creditors* shall and may have his, her or their action against the heirs-at-law of any *debtor.*"

And then the language of the 2d section, "shall be liable to pay any *debt* of his, her or their creditor."

The statute only speaks of *creditor and creditors, debts and debtors*.

This must mean existing creditors and existing debts.

At the death of Samuel Meeker, the covenantor, there was no debt due from him to the plaintiff—no such relation existed between them. This claim cannot therefore be considered a debt due from the covenantor within the meaning of our act.

The statute only contemplates debts, strictly so called, and it does not extend to recovery of damages for breaches of covenant made by the testator or covenantor.

But what is this suit for ? It is an action of covenant to recover damages for a breach of the ancestor's covenant to make a good title to the plaintiff. Not for a breach of the ancestor's covenant to pay a sum of money which was due before his death, and part of the damages which plaintiff seeks to recover is the amount of the costs and expenses of defending an action of dower brought against plaintiff by Mrs. Halsted.

It may be said that in the present case the damages for the breaches of covenant declared on are liquidated, and therefore in form may be sued for in action of debt. To which we answer—but they are not the less in substance damages.

We submit that our statute does not extend the remedy to actions of covenant against the devisee.

For the plaintiffs, *John W. Taylor*.

The question by the demurrers, is simply—

*Whether or not the plaintiffs' claim is a debt,* within the meaning of the act entitled " An act for the relief of creditors against heirs and devisees."

The claim is for compensation for the breach of a *covenant* or contract, under seal, and is two fold ; consisting of (1) liquidated damages, that is of $1366.46 adjudged against the plaintiffs for the value of the dower, to the date of the judgment, (February 25th, 1873,) and costs ; and

(2) Damages unliquidated, arising from the plaintiffs' disseizin or deprivation of one-third part of their premises.

## I.

As to the *liquidated* portion of the claim, it is submitted that there is no room for controversy.

It is a *debt* in the strictest and most technical sense of the term. That it forms a part of a claim, the residue of which is unliquidated, and is sued for with the latter, in an action of *covenant*, and not of debt, does not render or prove it any the less a *debt*.

It is too familiar and elementary learning, to be questioned or to need citation of authority for its support, that a debt or sum of money *covenanted* to be paid, may be recovered in an action of *covenant*, as well as of debt; and if *covenanted* to be paid by *instalments*, it is recoverable only in an action of covenant; although the judgment is, in *form*, for *damages*.

So on a parol promise to pay money, (as on a promissory note,) the promisor may be sued in assumpsit, as well as in debt, and when in assumpsit, the judgment is, in form, likewise for damages.

Our "Act for the relief of creditors against heirs and devisees," (to be presently noticed more fully,) although following in the main, that of 3 *W. and M., C.* 14, yet unlike that, it does not restrict the creditor's mode of relief to an action of debt, and therefore does not limit the species of debt to such as can be recovered only in that action.

Inasmuch, then, as a part, at least of the claim, is a liquidated sum—a *debt*—the demurrers should be overruled, being to the whole declaration, or to the plaintiffs' right to recover the claim, as a whole.

## II.

But the residue of the claim—the whole claim— is a *debt*, within the meaning of the act referred to.

### I.—IT IS A DEBT.

As to the meaning of the word—

(1.) In its narrowest and most technical, (but by no means its only legal,) sense, it is defined to be—"A sum of money

due by certain and express agreement." 3 *Bl. Com.* 154 ;. *Burrill's Law Dict.*

(2.) Its ordinary signification is shown by the following authorities :

" Debt, (*debitum, debeo,* from *de* and *habeo,*) anything had or held, of, or from another, his property or right, *his due ;* that which is *owed* to him ; which ought, at some time, to be delivered or paid to him."—*Richardson's Dict.*

" That which one person owes to another, whether it be money, goods, or services ; something due ; obligation ;. due."— *Worcester's Dict.*

" That which is due from one person to another, whether money, goods or services ; that which one person is bound to pay to another, *or to perform for his benefit* ; that of which payment is liable to be exacted ; due ; obligation ; liability."— *Webster's Dict.*

(3.) It has a legal signification, much broader than the first, and less comprehensive than the second or popular one ; as indicated and illustrated by the following authorities :

" All that is due a man under any form of obligation or promise."—*Bouvier's Law Dict.*

" The word ' debt ' is of large import, including not only debts of record, or judgments, and debts by specialty, but also obligations arising under simple contract, to a very wide extent ; and in its popular sense includes *all that is due to a man under any form of obligation or promise.*"—*Burrill's Law Dict.*

" A debt is not a contract, but the result of one. This seems the broadest definition of the word. It is in this sense that breaches of trust and *devastavits* are considered debts, *and that a covenantee is a specialty creditor of the covenantor,* though the time for payment has not arrived, (and therefore before breach,) provided that it is sure to arrive ; the debt in such case being ' *debitum in præsenti, solvendum in futuro ;*' nay, the mere *contingency* of liability constitutes a debt ; though it is not sufficient to support a creditor's suit, and this

latter class is known as that of contingent debts."—*Trower on the Laws of Debtor and Creditor* 1.

" A creditor, whose debt is secured by a covenant, is a creditor by specialty. *If a covenant is broken, though the damages are unliquidated, the covenantee is a specialty creditor."*—*Ram on Assets, &c.,* (2d ed.) 3.

" A creditor, whose debt was secured by covenant has been held to be a specialty creditor, where the covenant was by the lessor for the lessee's quiet enjoyment during the term ; by the grantor of an annuity, that he was seized in fee of the premises charged with it ; and by the grantor in a marriage settlement that the premises settled were free from encumbrances."—*Ram on Assets, &c.,* (2d ed.) 4, 5.

In the case of *Frazer* v. *Tunis,* 1 *Binney's R.* 254, decided in 1808, *a claim against an intestate's estate for damages on account of the breach of articles of agreement under seal, was held to be a debt by specialty, within the meaning of a Pennsylvania statute, regulating the priority of debts against the estates of decedents.*

" A demand arising from covenant is of the same nature, whether it be for a specific sum, or whether it sound merely in damages."

See *Toller on Executors,* (4th Am. ed.) 282 ; *Lovelass on Wills, &c., (Phil. ed.* 1839,) 139 ; *Wentworth on Executors, P.* 284, *(Phil. ed.* 1832 ) ; 2 *Williams on Executors,* (5th Am. ed.) 915; 3 *Redfield on Wills,* (2d ed.) 278, § 13 ; see, also, *Plumer* v. *Marchant,* 3 *Burr.* 1380 ; *Fremoult* v. *Dedire,* 1 *P. W.* 429 ; *Langley* v. *Furlong,* 1 *Dick.* 315 ; *Chevely* v. *Stone,* 2 *Id.* 782; *Musson* v. *May,* 3 *V. & B.* 197; *Watson* v. *Parker,* 6 *Beav.* 283 ; *Powdrell* v. *Jones,* 2 *Sm. & G.* 305, 335 ; *Lomas* v. *Wright,* 2 *M. & K.* 769 ; *Loan* v. *Casey,* 2 *W. Black* 965, *and opinion of Justice Blackstone; Jenkins* v. *Briant,* 6 *Sim.* 603; *Ex parte Tindal,* 8 *Bing.* 402 ; *Earl of Bath* v. *Earl of Bradford,* 2 *Ves.* 587 ; *Parker* v. *Harvey,* 2 *Eq. Cas. Abridged* 460; *Wells* v. *Fydell,* 10 *East.* 315 ; *Birmingham* v. *Burke,* 2 *J. & L.* 699; *In re Dickson, L. R.* 2 *Eq.* 156 ; *Bide* v. *Harrison, L. R.* 17 *Eq.* 76.

NOTE.—In this very recent case, a bequest of " *all and every sum or sums of money due to me at my decease*," was held to include damages recovered in an action by the executor, for a breach of covenant committed in the lifetime of the testator.

Sir Edward Coke, in commenting on the word debt (*debitum,*) in the statute of *Merton*, *ch.* 5, remarks as follows, as to the construction and meaning of that word :

" *Debitum* signifieth not only debt, for which an action of debt doth lie, but here in this ancient act of parliament, it signifieth generally *any duty to be yielded or paid ;* for *debitum* is derived from the verb *debeo ; id enim est, quod vel lege naturæ vel obligatione civili debetur;* as rents and the like." 2 *Inst.* 89 ; see, also, *Babcock* v. *Lillis*, 4 *Bradford* 218.

An examination of the foregoing authorities, will show that the word *debt*, especially when used in relation to the administration and marshaling of the assets of a deceased person, is not restricted in meaning to that "*for which an action of debt doth lie,*" but signifies " all that is due a man under any form of obligation or promise," and embraces *any demand for which an action ex contractu will lie ;* having a scope and meaning as comprehensive in the law of contracts, as the word trespass has in the law of torts. See *Ten Eyck* v. *Runk*, 2 *Vr.* 428; see, also, "*Doctor and Student*," *ch.* 10 & 11 ; *Wentworth on Executors*, *ch.* 11 & 12.

II.—IT IS A DEBT, *within the meaning of the act referred to.*

The act was passed March 7th, 1797, and is undoubtedly modeled after that of 3 *W. and M.*, *ch.* 14, entitled "*An act for the relief of creditors against fraudulent devises,*" but not without essential modifications, presently to be adverted to, and which make the English decisions upon the construction of that act, and relied upon by the demurrants, unsafe guides in the exposition of our own act.

The English act (3 *W. and M.*, *ch.* 14 ; 1 *Evans' Statutes*, *p.* 462,) after reciting, by way of preamble, (among other things,) that " it hath often so happened, that where several persons having *by bond or other specialties bound themselves*

*and their heirs,* and have afterwards died seized in fee simple of and in manors, messuages, lands, tenements and hereditaments, or had power or authority to dispose of, or charge the same by their wills or testaments, have, to the defrauding of *such their creditors,* by their last wills or testaments, devised the same or disposed thereof, in such manner as *such* creditors have lost their said debts ; for remedying of which, and for the maintenance of just and upright dealing     *     *     *
*     and for the means that such creditors may be enabled to recover *their said debts ;* proceeds to enact :

" That *in the cases before mentioned* every *such creditor* shall and may have and maintain his, her, and their *action and actions of debt, upon his, her, and their said bonds and specialties,* against the heirs and heirs-at-law of *such obligor or obligors,* and such devisee and devisees, jointly, by virtue of this act."

Our own act (*Nix. Dig.* 380,) without preamble, enacts :

" That, *all and every creditor and creditors, whether by simple contract* or specialty, and whether the heirs are mentioned therein or not, shall and may, by virtue of this act, have and maintain his, her, and *their action and actions,* against the heir and heirs-at-law of *any debtor* who hath already died, or shall hereafter die intestate, seized of any messuages, lands, tenements or hereditaments, and against the heir and heirs-at-law, and devisee and devisees of such debtor, in case such debtor made any last will and testament."

From a comparison of these two acts, it will be seen that our act is conceived in a more liberal spirit, and has a much wider scope than the English act.

The English act, interpreted literally, obviously confines the remedy to *specialty* debts, for which an *action of debt will lie;* excluding from its provisions all but *that one class* of debts, and all of that class, not recoverable in an action of debt.   That there are many of that class of debts, even in the most technical sense of the word (*i. e.,* " sums of money due upon a certain and express agreement,") not recoverable in

that form of action, is well settled. See 1 *Chitty's Pl.* 108, *et seq.*

On the other hand, our own act, with unstinted liberality, as if intent on providing an ample, thorough and effectual remedy for the mischief of the old law, extends relief—

1. To *all and every* creditor and creditors.

2. Against the heirs, etc., of *any debtor.*

3. *Without limitation as to the form of action.*

The English decisions cited in support of the demurrers, have no application to the provisions of our act.

In the case of *Wilson* v. *Knubley*, 7 *East* 128, (decided in 1806,) it was held, to use the language of the syllabus (which is a neat and correct abstract of the decision,) that—

"An action of *Covenant* does not lie upon the statute 3 *W. and M., ch.* 14, against the devisee of lands to recover damages for a breach of covenant made by the devisor ; but the remedy thereby given is confined to cases where *debt* lies."

Lord Ellenborough, Chief Justice, in delivering his opinion says : "I agree with the plaintiff's counsel, that the grievance recited in the preamble of the act, would have led one to suppose that the legislature meant to have given *a larger remedy than the action of debt;* but when they came to provide the means whereby the creditors are to be remedied, they are more limited than the grievance recited. \* \* \* If it had only said that they would have *actions*, without more, *there would have been ground for going the length of the argument of the plaintiff's counsel;* but the legislature has expressly limited the means of recovery by such creditors, to to *actions of debt.* \* \* \* \* \* We cannot bring within the equity of the statute of *W. and M.;* a remedy which the legislature have almost, as one may say, in express terms, excluded ; for it says what the means of such creditors recovering their said debts shall be, and in stating those means, it only gives *the action of debt.* To extend it, therefore, to the action of *covenant*, would be to legislate, and not to construe the act of the legislature."

Says Grose, J., in the same case : " At common law neither

*debt* nor *covenant* lay against the *devisee;* but the legislature has given a remedy against him by the statute 3 *W. and M.;* that remedy, however, is express, and is confined to the action of *debt,* and though the word *specialties* be used as well as *bonds,* yet construing the whole together, it must be confined to such *specialties* (as those) on which the *action of debt lies.*"

From the language of the judges, it is evident that but for the limitation of the form of the remedy to " *an action of debt,*" the claim of the plaintiff would have been held to be a debt, within the meaning of the English act.

In the case of *Farley* v. *Briant,* 3 *Ad. & El.* 839, the court, following the decision in Wilson *v.* Knubly, held further, as a logical result of the principle decided in that case, that an action of *debt* did not lie against the heirs and devisees of a *surety,* for breaches of covenant, which did not occur in *his lifetime.* Even though the damages upon the occurrence of such breach were liquidated, so that in form they might be sued for in an action of debt.

No other conclusion was possible, reasoning on the basis of the decision in Wilson *v.* Knubley, that under the peculiar wording of the act of 3 *W. and M.,* the debts for which it provided a remedy were *those only for which an action of debt would lie.* Lord Denman, C. J., in his opinion in Farley *v.* Briant, says, referring to the peculiar language of the preamble of the English act:

" It is at least clear, upon these words, that, in order to bring a case within the statute, the relation of creditor and debtor, *in whatever sense we understand those words, must exist between the plaintiff and the devisor, in the lifetime of both.* In the present case, John Briant had become liable for the performance of covenants by another man. No payment would be due from him; he would not be indebted, *either in ordinary parlance, or in ordinary legal language, until there was a breach by his principal. No such event happened in his lifetime.*"

The construction of our act is embarrassed by no restraining preamble; the devisor in the case at bar was *no surety,* but a principal debtor; and his covenant was broken (by the

existence of the inchoate right of dower,) not only in his *lifetime*, but *as soon as the covenant was made.*   *Carter* v. *Denman*, 3 *Zab.* 260.

The case of *Hunting* v. *Sheldrake*, 9 *M. & W.* 256, merely held that under the English act, a specialty creditor *could not maintain an action against the devisee alone, there being no heir.*

As a consequence of the literal and narrow construction given to the act of 3 *W. and M.*, by the courts in these cases, parliament interfered by amending the act so that there could be no doubt about its meaning.

It has been said with great truth, by an eminent jurist, in referring to these decisions, that they "were *based upon very technical grounds,* and however *possibly* correct as construing a statute which gave a new remedy against devisees, they have not been applied to cases not strictly falling within them."

See *Rawle on Covenants for Title (4th ed.)* 542, 554; *Bermingham* v. *Burke*, 2 *Jones & L.* 699; *Jenkins* v. *Briant*, 6 *Sim.* 603; *Bide* v. *Harrison*, *L. R.* 17 *Eq.* 76.

In the construction of our own act, we need not be embarrassed by the decisions under the English statute of 3 *W. and M.*, which, as we have seen, were based on the peculiar phraseology of that act, and restrained by the language of the preamble.   We are entirely free to construe our statute in accordance with the liberal principles applicable to remedial acts.

By the common law, the *heir* was bound, to the extent of lands inherited, by all his ancestor's *covenants*, as well as bonds, if named therein; while a *devisee* was *not* liable on the covenants or obligations of his testator, in respect to land *devised*.

See *Platt on Covenants* 449, and authorities there cited; *Rawle on Covenants for Title*, 541–3; *Dyke* v. *Sweeting*, *Willes* 585; *Com. Dig., Covenant*, C. 2.

"If a man covenant for himself and his heirs *to do anything whatsoever;* hereby *his heirs are bound."   Shep. Touch.* 178.

The *mischief* was, that a man might *devise* all his lands, and thereby deprive his covenantees and obligees of their remedy as to those lands.

To *provide a remedy* for this, as well as other mischiefs, our "act for the relief of creditors against heirs *and devisees,*" was passed.

The intention of the legislature was undoubtedly to make the lands of a man at his decease, liable in the hands of a *devisee* to the same extent as in the hands of an *heir;* or, (perhaps it may be more correct to say,) to make a *devisee* chargeable in respect to lands *devised* to him, to the same extent and for the same demands, that an *heir* was chargeable in regard to lands inherited by him; that by the word *"debt"* they meant all that *was due,* or could have been claimed from the *heir,* in respect to inherited land; and by *creditor* and *debtor,* the person *to,* and *from* whom, respectively, such claim was due.

"When the expression in a statute is special or particular, *but the reason is general, the expression should be deemed general.* 1 *Kent's Com.* 462.

"Every statute ought to be expounded, not according to the letter, but according to the meaning." *Potter's Dwarris on Stat.* 179; 1 *Kent's Com.* 462.

"In early times, the legislature used (and I believe it was a wise course to take,) to pass laws in general and few terms. They were left to the courts of law, to be construed *so as to reach all the cases within the mischiefs to be remedied.* Justice Buller in *Bradley* v. *Clark,* 5 *T. R.* 197—

"Other things which are not remedied by the *words* of statutes are (*by equity of reason*) *taken within the purview of the same statutes.*" *Reniger* v. *Fogossa, Plowd.* 14.

See, in support of the principle of construction contended for, *Potter's Dwarris on Stat.* 231, *et seq.,* and the numerous examples given and cases referred to.

See also the case of *Ten Eyck* v. *Runk,* 2 *Vr.* 428; *a case quite in point.*

### III.

But, whatever may be the construction of the statute the *heirs-at-law* are, as we have seen, liable in this action, *at common law* and independently of the statute, and the demurrers in any view of the statute, should, as to them, be OVERRULED.

Argued at November Term, 1874, before BEASLEY, Chief Justice, and Justices DALRIMPLE, DEPUE and SCUDDER.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This is an action against heirs and devisees, on a covenant against encumbrances contained in a deed of conveyance of their ancestor and devisor.    The wife of a former owner of the premises in question, did not join in the conveyance which formed a link in the title which the ancestor of the defendants conveyed to the plaintiffs; and the declaration shows, that after the death of such ancestor, this wife, having become a widow, enforced her right and recovered her seizin of the third of the lands, besides certain costs of suit.    The action is in the form of covenant, and the question is, whether this kind of suit, for such a subject matter, will lie against heirs and devisees, by force of the statute of this state.    The statute thus brought before the court for construction, for the first time, is, that entitled " An act for the relief of creditors against heirs and devisees," and is to be found in *Nix. Dig.* 380.

This statute is manifestly of a remedial character.    By the common law, the land of a deceased debtor was not liable for his debts or obligations.    A creditor could not follow the realty which consequently passed to the heir or devisee, unencumbered by the engagements of the deceased owner.    Nor was there any personal responsibility for any such engagements on the part of the heir, unless the ancestor had executed an obligation by which he had specially bound his heirs, in which event, his descendant was liable to the extent of the value of the lands which had descended to him and which had not been aliened at the time of the commencement of the suit against him.    But even the obligation of such

specialties did not extend to the devisees of the debtor. The consequence was, that by force of this system, the lands of a debtor passed to his devisees discharged from his debts, or if he died intestate, they went to his heirs similarly exonerated, unless for such debts as he had specially imposed on his heirs by his contracts, under seal. Such a system was defensible only on the policy of the feudal law, the tendency of which was to transmit the heritage unburthened, as the basis of its military organization; but it was plainly inconsistent with the commercial spirit, which can favorably exist only when its engagements can be fully enforced at law, and the consequence was, that when traffic became the prevailing interest, the old law, in the particular just noticed, was found defective. Accordingly, the evil was attempted to be remedied by the act entitled "An act for the relief of creditors against fraudulent devises," passed in the third year in the reign of *William and Mary, ch.* 14, (*A. D.* 1691.)

The preamble of this statute, stating the object in view, recites that "Whereas it is not reasonable or just that by the practice or contrivance of any debtors, their creditors should be deprived of their just debts; and nevertheless it hath often so happened that where several persons having, by bonds or other specialties, bound themselves and their heirs, and have afterwards died seized in fee simple of and in manors, messuages, lands, tenements and hereditaments, or had power or authority to dispose of or charge the same by their wills or testaments, have, to the defrauding of such their creditors, by their last wills or testaments, devised the same or disposed thereof in such manner as such creditors have lost their said debts; for remedying of which, &c. The second section of this act is the important one on this occasion, and it is as follows: "And for the means that such creditors may be enabled to recover their said debts, be it further enacted, &c., that in the cases before mentioned, every such creditor shall and may have and maintain his, her, and their *action and actions of debt*, upon his, her and their said bonds and specialties against the heir and heirs-at-law of such obligor or

obligors and such devisee and devisees jointly, by virtue of this act, &c.

From this recital, it will be perceived that it appears to have been the parliamentary intention to render the heirs and devisees liable to suit in all cases in which the debtor had bound himself and heirs " by a bond or other specialty," but as the body of the act was couched in less extensive terms, a doubt was left if such design was carried into effect. This doubt was set at rest by the decision of the King's Bench in the leading case of *Wilson* v. *Knubley*, 7 *East.* 128. The action in that case was covenant and rested on facts similar in substance to those stated in the present declaration, and the result reached by the court is thus summarized by the reporter in his syllabus that, " an action of covenant does not lie upon the statute (3 *W. and M., ch.* 14,) against the devisee of land to recover damages for a breach of covenant made by the devisor; but the remedy thereby given is confined to cases where *debt* lies." This exposition being approved in subsequent cases, the original imperfection of the English law in this respect remained, in a measure, unamended until the passage of a later statute, which extended the remedy of the creditor against heirs and devisees to cases arising out of breaches of contracts of a deceased obligor.

In this situation of the authorities, if the statute of this state was a mere counterpart of the act of William and Mary, I should not hesitate to follow the interpretation which was put, to the effect just expressed, upon this latter enactment. But these statutes are not identical. The act of this state, which was drawn by Judge Paterson, is characterised by the use of terms of much broader signification than those contained in its English antecedent, and, upon a careful consideration, it seems to me scarcely possible not to conclude that this marked alteration of phrase was designed to remove imperfections which were observed to deform the model; one of such imperfections being the restricted range which it gave to the creditor against the devisee. According to the judicial exposition of the English act, the creditor had no action

against the devisee except for obligations which were enforceable by a suit in the form of debt, so that breaches of covenant for unliquidated damages were left without redress, as they were at common law, so far as related to a person taking land by a testamentary gift.   But this result was the creature of the peculiar language of the act of William and Mary, the context being, in this respect, somewhat inconsistent with the preamble.   The truth of this remark will be at once apparent by a perusal of the report of the case, already cited, of Wilson *v.* Knubley.   That suit was for breaches of a covenant against encumbrances, contained in a conveyance, the grantor being dead, and the defendant being his devisee.   The point raised was, whether such action would lie by virtue of the statute, the counsel for the defendant contending that the remedial compass of the act did not embrace actions of that kind, which was covenant; while, on the other side it was insisted that such form of proceeding was at least within the meaning and equity of the statute, if not within its words.   Lord Ellenborough, in giving his opinion, places the ground of decision in so clear a light that a short quotation will not be out of place.   He says : "I agree with the plaintiff's counsel that the grievance recited in the preamble of the act would have led one to suppose that the legislature meant to have given a larger remedy than the action of debt.   For it recites, &c., and by section two it says, 'for the means that such creditors may be enabled to recover *their said debts,* that in the cases before mentioned every such creditors ·shall have their *actions of debt* upon the said bonds and specialties,' &c.   If it had only said that they should have their *actions* without more, then there would have been ground for going the length of the argument of the plaintiff's counsel ; but the legislature have expressly limited the means of recovery by such creditors to actions of debt."

From this extract it will be observed that the restriction of the creditor to a remedy in one form of action, that is to the action of debt, was the decisive circumstance on which this decision was rested.   But for it Lord Ellenborough clearly

intimates that the argument, derived from the gravamen complained of being within the mischief to be remedied, would have bent his judgment in the opposite direction. It is clear, therefore, that this precedent is not on the side of the defendant in the present action, when we come to the exposition of our own statutes, for in this important feature our act varies from that of William and Mary. In order to be intelligible it is necessary to recite the pertinent words of the statute of this state. This is its language: "All and every creditor and creditors, whether by simple contract or specialty, and whether the heirs are mentioned therein or not, shall and may, by virtue of this act, have and maintain his, her or *their action and actions* against the heir and heirs-at-law of any debtor who hath already died, or shall hereafter die intestate, seized of any messuages, lands, tenements or hereditaments, and against the heir and heirs-at-law, and devisee and devisees of such debtor, in case such debtor made any last will and testament," &c.

Thus it appears that in our act the creditor is authorized, in broad terms, to bring his *action or actions* against the heirs and devisees; whereas, in the English act he is confined to an action of debt—a difference so material that, as we have seen, the restriction to a single form of remedy led to the English adjudication just quoted. When, therefore, it is now contended that, from some of the terms used in it, an inference is to be drawn that the law makers did not intend to make the heirs and devisees liable for any but the debts of the ancestor, this enlargement of the form of action is a strong argument against such view. If such a contracted interpretation should be deemed legitimate, but slight reason appears why, in this respect, the statutory phraseology was changed. With the suggested end to be accomplished, the language of the English act was quite apt. I think the change of the words evinces a change of intent. At all events, it seems to me to be beyond reasonable contention that the English adjudications, interpreting the statute of William and Mary, can

have but little weight in any attempt to expound the act of this state, on account of their verbal differences.

The remaining argument of the counsel of the defendants has greater force. That argument is, that the act in terms gives nothing more than an action in favor of a *creditor* against the heirs and devisees of a *debtor;* and that by the use of these expressions, *debts,* strictly so called, are contemplated, and not damages for the breach of covenants. Undoubtedly, according to common usage, the terms in question have the meaning ascribed to them; and in the construction of statutes, such common usage is mostly the criterion by which the sense of the language is to be ascertained. This is the common rule, founded in good sense, and it is a rule which, I think, should not be, on slight grounds, ignored or infringed. But like all other guides to statutory interpretation, the principle cannot have a universal application. When the intent of the law maker is entirely clear, in view of the purpose expressed in the general provisions of the law, a verbal expression here and there in the act will not stand in the way of the effectuation of such intent. And, therefore, when words used have a common meaning and also an uncommon meaning, and the former appears to run counter to the general scope of the law, and the latter is in harmony with it, it is the latter that will be adopted. And this is the canon of construction now applicable, for the terms here criticised have both a usual and unusual signification; the term creditor does not mean singly a person to whom a debt is due—that is but its usual meaning; but it further denotes a person to whom any obligation is due—and this is its unusual meaning. A creditor, according to the definition of Bouvier, " is he who has a right to require the fulfilment of an obligation or contract." In this large sense it means more than the person to whom money is owing. Webster's explanation of the word is, " A person to whom a sum of money or other thing is due by obligation, promise, or in law." This description has scope enough to embrace the duty where non-observance constitutes the gravamen of the present suit. Also,

the words "debt" and "debtor," have a similar amplitude
of meaning. "The word 'debt,'" says Burrill, in his law
dictionary, "is of large import, including not only debts of
record or judgment, and debts by specialty, but also obliga-
tions arising under simple contract, to a very wide extent,
and in its popular sense includes all that is due to a man
under any form of obligation or promise." And Sir Edward
Coke, in commenting on the word *debitum*, in the statute of
*Merton*, ch. 5, says: "Debitum signifieth not only debt, for
which an action of debt doth lie, but here in this ancient act
of parliament, it signifieth generally any duty to be yielded
or paid." The same extent of meaning is ascribed to this
term by Chief Justice Tilghman, in *Frazer* v. *Tunis*, 1 *Bin-
ney's Rep.* 254; and the judgment in the recent case of
*Bide* v. *Harrison*, L. R., 17 *Eq.* 76, is to the same effect, it
being there held that a bequest of "all and every sum or
sums of money due to me at my decease," included damages
recovered in an action by the executor for a breach of cove-
nant committed in the lifetime of the testator. The following
are likewise pertinent authorities : *Ram on Assets*, (2d ed.) 3,
4, 5 ; *Toller on Executors* 282; *Wentworth on Executors* 284 ;
2 *Williams on Executors* 915.

It follows, then, that the words in question, in their largest
sense, are comprehensive of the remedy claimed in the present
suit. Whether they are to be held to have such comprehen-
siveness in their present use, depends on the inquiry into the
intent, in this respect, of the law maker ; and a knowledge of
the state of the law at the date of the act, is requisite to the
formation of a correct judgment upon this question.

Previous to the passage of the colonial act making real
estate subject to the lien of debts, lands in this state could not
be sold under execution, but could only be extended upon an
*elegit*. That law was enacted December 2d, 1743, and ap-
pears in *Allinson's Laws* 129. The preamble recites that
it "is highly reasonable and just" that the real estate of every
person should be subject to the payment of his debts; and the
first section enacts, that such real estate "shall be liable and

chargeable with all just debts, duties and demands of whatever nature or kind soever, owing by, or due from any such person, &c., and shall be and are hereby made chattels for the satisfaction thereof, in like manner as personal estates within this province are seized, sold or disposed of for the satisfaction of debts." The effect of this act was to make lands liable to sale on a judgment against the executor or administrator, to the same extent as were goods of the decedent; and this act was in operation at the time that Judge Paterson, in his revision, undertook to remodel this branch of the system. What his design was, and what changes he effected, will appear, if we extend our view so as to embrace not only the act just referred to, and the one immediately under consideration, but also the act drawn by the same hand, and which is a part of the same general plan, entitled " an act making lands liable to be sold for the payment of debts." *Pat. Laws* 369. This last enactment, so far as relates to our present subject, declares, that lands shall not be sold or affected by virtue of any judgment against executors or administrators, and provides for the sale by the order of the Orphans Court of the decedent's lands, after the exhaustion of the personal estate. By force of these acts, therefore, the alteration made in the system was this : the heirs and devisees were made liable to the extent of the value of the lands which devolved to them ; or, the executor or administrator, if the goods failed, could resort to the lands through certain judicial action. Now, no one, I think, can consider the change thus wrought without being convinced that it was no part of the design of the reviser to suffer the lands of the decedent to escape any liability for his engagements which had before been imposed upon them. The provincial law, declaring that such a course was " highly reasonable and just," had made lands " liable to, and chargeable with all just debts, duties, and demands, &c., owing by or due from" the deceased owner ; and it is most improbable that it was the intention to take a retrograde step, and to follow the lands into the hands of the heir or devisee with only a partial liability. I can see

no indication of any such purpose. To subject the lands to the judgment against the executor or administrator, was a hardship to the heir or devisee, as they were not parties to such proceeding, and there was real danger that their interests might be impaired by collusive recoveries ; there was a reason, therefore, to do away with that procedure, but there was no reason to invade or mutilate that admitted rule of justice, that all the property, both real and personal, should be responsible for all the debtor's legal liabilities. And, accordingly, the idea of the reviser, as I read it, was, to change, not this salutary principle, but merely the form of carrying it into effect. Instead of the lands being made liable in the hands of the personal representative for all the " debts, duties, and demands" of the decedent, a personal liability to the extent of the value of such lands was put upon the parties taking by descent or by purchase under the will. I am thus forced to reject the idea, that Judge Paterson intended to place a burthen on the heir or devisee only in favor of a certain class of creditors. The machinery of the law was changed, but the purpose remained unchanged.

And this construction will stand further justified, if we note the departures of our act from the provisions of that of William and Mary. This latter enactment did not extend a remedy to the creditor against the heir or devisee, unless the contract broken was in the form of a specialty, and unless an obligation was, in terms, imposed upon the heir. To the contrary, our act embraces obligations created by simple contract, and " whether the heirs are mentioned therein or not." This amplification of remedial efficacy is a strong exhibition of a desire to carry out the ancient colonial system of this state, which blended the real and personal assets into a fund for the payment of the legal dues of the deceased owner, and which is a consistent part of the general plan embodied in the various enactments which have just been referred to. By giving, then, a broad signification to the words in question, the spirit of this statute is subserved, and the evident policy, as manifested in other parts of our law, is forwarded and exe-

cuted. A narrower interpretation of the statutory language would be out of harmony with the purview of this act, and of those cognate acts which, being in *pari materia*, are to be taken into consideration in any endeavor to construe it. Under such conditions, the terms in question should not be given a prevailing force. " When the expression in a statute is special or particular," says Chancellor Kent, 1 *Com.* 462, " but the reason is general, the expression should be deemed general." The rule thus defined, is applicable, in its full vigor, in the present instance. The remedy provided by this statute should not be so abridged by the ascription of a narrow meaning to the terms " creditor" and " debtor," as to limit it to that class of contracts which call for the payment of specific sums of money, but, in furtherance of the general policy of our laws, and of the evident design of the act itself, should be extended in meaning so as to make it applicable to every obligation growing out of contract, which rested on the decedent at the time of his decease. The result, consequently is, that the plaintiff must have judgment in his favor on this demurrer.