Glenn v. Callahan.

No. 27,796.

•DAYTON F. GLENN, *Appellant,* v. DAN F. CALLAHAN et al.,
*Appellees.*

(262 Pac. 583.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Insolvency—Transfers Void as Against Stockholder's Double Liability—Constitutional Law.* That part of section 9-156 of the Revised Statutes which declares that all transfers of property by a stockholder in a closed insolvent bank shall be void as against the double liability of the stockholder if such transfer is made before the double liability is paid does not violate any part of the fourteenth amendment to the constitution of the United States, nor section eighteen of the bill of rights of the constitution of the state of Kansas.

2. SAME—*Insolvency—Transfers—Void as Against Stockholder's Double Liability—Laches of Receiver.* A bank, organized under the laws of the state of Kansas, was closed on February 1, 1924, it being then insolvent. On July 1, 1924, a stockholder executed notes to renew preëxisting indebtedness and executed a mortgage on real property owned by him to secure the payment of those notes. In May, 1925, the receiver of the bank commenced actions to enforce payment of the double liability against the stockholder and recovered judgment therein. Execution was levied on the mortgaged land to satisfy the judgment. The holder of the mortgage commenced a foreclosure action making the receiver and the bank parties defendant. The receiver set up the judgment and claimed the mortgage on the land was void as against the double liability of the stockholder. The plaintiff in the foreclosure action did not plead laches on the part of the receiver, nor call that matter to the attention of the trial court. *Held,* That the action of the receiver against the stockholder was not barred by laches and that the receiver is not barred from attempting to enforce payment out of the mortgaged property.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed January 7, 1928. Affirmed.

*J. R. Beeching,* of Hutchinson, *Justin D. Bowersock, Robert B. Fizzell* and *John Franklin Rhodes,* all of Kansas City, Mo., for the appellant.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to foreclose a mortgage given by the defendants Dan F. Callahan and Esther D. Callahan, his wife, on certain real property situated in King-

man county.  Judgment of foreclosure was entered, but the mortgage lien was made subject to the lien of the Farmers State Bank of Kingman and of Charles W. Johnson, its receiver.  The plaintiff appeals.

The action was tried on an agreed statement of facts, which was, in part, as follows:

"That the Farmers State Bank of Kingman, Kan., was a Kansas banking corporation and had been such for more than ten years prior to the commencement of this action; that on or about the 16th day of January, 1924, said bank became insolvent and closed its doors, and on February 1, 1924, a receiver was appointed therefor, and it was deemed necessary at said time to collect the double liability upon the capital stock of said bank;  . . .  that Ora J. Callahan died intestate a resident of Kingman county, Kansas, on or about the 20th day of October, 1918, leaving as her sole and only heirs at law the defendant, Dan F. Callahan, her husband, and three minor children; that at the time of her death the said Ora J. Callahan was the owner of thirteen and one-third shares of the capital stock of the Farmers State Bank of Kingman, Kan.; that said stock stood upon the books of said bank in her name and so stood in the name of said Ora J. Callahan on the books of said bank at the time said bank became insolvent and closed its doors.  That Dan F. Callahan was, on or about the first day of November, 1918, duly appointed and qualified as administrator of the estate of Ora J. Callahan, deceased, and that said estate has never been settled.  . . .  That the double liability upon said thirteen and one-third shares of stock of the said Ora J. Callahan has never been paid, but that a judgment was recovered in the district court of Kingman county, Kansas, in case No. 8,094, on or about the 2d day of April, 1926, against the said Dan F. Callahan as administrator of the estate of Ora J. Callahan, deceased, in the amount of $1,486.60, with six per cent interest from said date until paid, which judgment has never been paid, but has been filed and allowed in the probate court of Kingman county, Kansas, as a claim of the sixth class against said estate; that the estate of Ora J. Callahan, deceased, had no personal property, and said administrator at this time has no personal property in his hands with which to pay said judgment.

"That for more than ten years prior to January 16, 1924, Dan F. Callahan was a majority stockholder of the Farmers State Bank of Kingman, Kan., and had been president of said bank and at the time of the closing of said bank was a director thereof and the owner of 247⅔ shares of the capital stock of said bank, of the par value of $100 per share; that on or about the —— day of May, 1925, cause No. 8,097 was filed in the district court of Kingman county, Kansas, by said bank and its receiver, against said Dan F. Callahan, to recover upon said double liability, and on December 14, 1925, a judgment was rendered in said court and cause in favor of said bank and its receiver and against said Dan F. Callahan for the double liability upon his said stock in the amount of $27,490.97 with interest from said date; that said judgment, nor any part thereof, has ever been paid and is still due and owing from said Callahan.

"That the said Dan F. Callahan, for some time prior to the closing of said bank, had been indebted to the Fidelity National Bank and Trust Company of Kansas City, Mo., in the approximate amount of the note and mortgage sued upon by said plaintiff herein; that said Callahan was never indebted to said plaintiff, Dayton F. Glenn, but that on or about the 1st day of July, 1924, in order to secure said indebtedness due and owing said Fidelity National Bank and Trust Company, said D. F. Callahan and his second wife, Esther Callahan, executed and delivered the renewal note secured by said mortgage as set out in plaintiff's petition and amended petition herein, and said renewal note and mortgage were executed to said Fidelity National Bank and Trust Company in the name of the plaintiff herein, Dayton F. Glenn, merely for convenience, but for the indebtedness owing to said Fidelity National Bank and Trust Company by said D. F. Callahan; that said mortgage was filed for record in the office of the register of deeds of Kingman county, Kansas, on December 6, 1924.

"That for a number of years prior to January 16, 1924, the Fidelity National Bank and Trust Company of Kansas City, Mo., had acted as one of the Kansas City correspondents of said Farmers State Bank of Kingman, Kan., and on January 16, 1924, the Farmers State Bank of Kingman, Kan., had on deposit with the Fidelity National Bank and Trust Company an account of approximately $1,800 which said account was during the first few months of the receivership withdrawn by said receiver and the accounts of said two banks finally settled.

"That on March 24, 1927, an execution was issued out of the district court of Kingman county, Kansas, in case No. 8,097, and on March 26, 1927, the sheriff of said county levied the same upon the interest of the said Dan F. Callahan in all the lands and tenements described in plaintiff's petition. That no prior execution had been issued in said case.

"That said Farmers State Bank of Kingman, Kan., through its duly constituted officers, had during all the time previous to January 16, 1924, filed with the state bank commissioner in his office at Topeka, Kan., and with the county clerk in her office in Kingman, Kan., reports as required by law, showing full and complete lists of all the stockholders of said bank."

The judgment recites that—

"The court further finds that the defendants, the Farmers State Bank of Kingman, Kan., and Charles W. Johnson, receiver thereof, have a first and prior lien, prior to the lien of said plaintiff, upon all of the above-described lands and tenements by reason of the double liability judgments of said bank and its receiver in cases Nos. 8,094 and 8,097 of the district court of Kingman county, Kansas, and that said liens of said defendant bank and its receiver are first and prior liens upon said above-described lands."

1. The plaintiff argues—

"1. That said judgment was given in response to a statute (*supra*) the provisions of which are in violation of the due process and equal protection of the law clause of the federal constitution, fourteenth amendment..

Glenn v. Callahan.

"2. That the judgment was given in response to a statute (*supra*) the provisions of which are in violation of section 18 of the bill of rights of the state constitution, which section guarantees that no person shall suffer injuries to property without due process of law."

Section 9-156 of the Revised Statutes, the statute that is questioned by the plaintiff, reads:

"At any time after the closing of any incorporated bank, if it shall appear to the receiver thereof that the assets of such bank are insufficient to pay its liabilities, it shall be the duty of such receiver to immediately institute proper proceedings, in the name of the bank, for the collection of the liability of the stockholders of such bank; all sums so collected to become a part of the assets of such bank and to be distributed *pro rata* to the creditors thereof in the same manner as other funds: *Provided,* That all transfers of property by a stockholder after the closing of any such bank, and before the payment of the double liability as provided by this act, shall be absolutely void as against said double liability. No action by any creditor against any stockholder of such bank for the recovery of such liability shall be maintained unless it shall appear to the satisfaction of the court that the receiver has failed to commence action as herein provided."

The part of the statute that is questioned is the following:

"All transfers of property by a stockholder, after the closing of any such bank and before the payment of the double liability as provided by this act, shall be absolutely void as against said double liability."

The provision of the constitution of the United States on which the plaintiff relies is the last part of the fourteenth amendment, which reads:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Section 18 of the bill of rights of the constitution of the state of Kansas, on which the plaintiff relies, reads:

"All persons for injuries suffered in person, reputation, or property, shall have remedy by due course of law, and justice administered without delay."

Does the restriction on the alienation of the property of a stockholder in a bank violate the constitution of the United States or of the state of Kansas?

We begin the discussion of this question by quoting from the syllabus in *State, ex rel., v. Robinson,* 1 Kan. 17, as follows:

"A statute will not be declared unconstitutional, unless its infringement of the superior law is clear, beyond substantial doubt."

That principle has been repeatedly declared by this court. Among the decisions are *Leavenworth County v. Miller,* 7 Kan. 479, 480; *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 157, 34 Pac. 416; *Rural School District v. Davis,* 96 Kan. 647, 648, 152 Pac. 666; *State, ex rel., v. Gardner,* 122 Kan. 508, 510, 252 Pac. 463.

The statute questioned is, in effect, a restriction against a stockholder in a state bank, prohibiting him from transferring his property after the bank has ·closed before he has paid his double liability created by the statute. The argument of the plaintiff is, in effect, that a property owner has an unrestricted, uncontrolled right to alienate his property, either real or personal. There are many restrictions on the right of alienation of property.

The statute of frauds, in section 33-102, provides that "every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods, or chattels . . . made . . . with intent to hinder, delay, or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons' who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect."

Another restriction on the alienation of real property is found in the statute of frauds in section 33-105, as follows:

"No leases, estates or interests of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note, in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law."

These statutes have been in effect for years.

The title to a homestead on which a husband and wife may live may be in the husband. He may have purchased the property with his money, but he cannot alienate it without the joint consent of his wife. (R. S. 60-3501.)

Either the husband or the wife may own land not occupied as a homestead, but neither can convey the land so as to give a full, absolute, indefeasible title to the whole of it without the consent of the other. (R. S. 22-108.)

Neither the husband nor the wife can mortgage his or her exempt personal property unless the mortgage be executed by both. (R. S. 58-312.)

Another example of a restriction on alienation of property, one closely parallel to the present situation, is found in the bank-

Glenn v. Callahan.

ruptcy law of the United States, which renders ineffective a debtor's transfer of his property when made within four months preceding the filing of the petition in bankruptcy, the effect of which transfer is to enable any one of his creditors to obtain a greater percentage of his debt than any other of his creditors of the same class.

If the merchant disposes of the whole or any part of his stock of merchandise or fixtures pertaining thereto otherwise than in the ordinary course of his business, except under certain conditions, the transfer is void as against his creditors. (R. S. 58-101.)

A public utility or common carrier may not issue stocks, certificates, bonds, notes or other evidences of indebtedness, payable at periods of more than twelve months after the date thereof unless it obtains from the public service commission a certificate stating the amount, character, purposes and terms on which such stocks, certificates, bonds, notes or other evidences of indebtedness are proposed to be issued. (R. S. 66-125.)

A public utility cannot transact business in this state until it has obtained a permit from the public service commission certifying that public convenience will be promoted by the transaction of its business. (R. S. 66-131.)

A public utility cannot assign, transfer, or lease its franchise without the consent of the public service commission. (R. S. 66-136.)

Stock in a corporation is transferable only on its books in such manner as its by-laws may prescribe. (R. S. 17-604.)

An owner of property who desires to control the disposition of it at his death must do so by will, which must conform with certain requirements. (R. S. 22-202.)

Creditors of a deceased person do not share equally in the collection of their claims against his estate. Their claims are classified in five different classes, and preference is made in favor of the first, second, etc. (Laws of 1925, ch. 161, § 1.)

Where the owner of personal property sells all of it to another after it is assessed, and does not retain sufficient to pay the taxes thereon, the property, after it has been sold, is liable for the taxes on it. (R. S. 79-317.)

These illustrations conclusively establish that there are many restrictions on the right of an owner to transfer his property. In none of these instances can a purchaser acquire rights in property in violation of the statute except under conditions not here necessary

4—125 Kan.

to state. The plaintiff took what Callahan could legally dispose of, nothing more; he took the mortgage subject to the conditions imposed by statute, the validity of which he is questioning.

Banking is a business in which the public is interested; for that reason, it is subject to control by the state. (*Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80; *Barber County v. Bank Commissioner,* 113 Kan. 180, 188, 213 Pac. 1054.) To what extent may that control go?

In *State Savings, etc., Bank v. Anderson,* 165 Cal. 437, 443, it was said that—

"The business of banking being therefore subject to the regulation by the state in the exercise of its police power, such power of regulation is supreme and subject to no limitation so far as the fourteenth amendment to the federal constitution is concerned, except that such regulation must be reasonable."

In *Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247, this court said:

"The clause in the fourteenth amendment to the constitution of the United States, 'nor shall any state deprive any person of life, liberty, or property, without due process of law,' is not a limitation upon the police power of the state to pass and enforce such laws as in its judgment will inure to the health, morals and general welfare of its people." (Syl. ¶ 3.)

In *Noble State Bank v. Haskell,* 219 U. S. 104, 111-113, the court said:

"It may be said in a general way that the police power extends to all the great public needs. . . . There are many things that a man might do at common law that the states may forbid. He might embezzle until a statute cut down his liberty. We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the state in taking the whole business of banking under its control. On the contrary we are of opinion that it may go on from regulation to prohibition except upon such conditions as it may prescribe. In short, when the Oklahoma legislature declares by implication that free banking is a public danger, and that incorporation, inspection and the above-described coöperation are necessary safeguards, this court certainly cannot say that it is wrong."

In 6 R. C. L. 197 it is said:

"The fourteenth amendment to the constitution of the United States does not interfere with the proper exercise of the police power of the several states."

A long list of cases is there cited to support that rule.

In *Bernheimer v. Converse,* 206 U. S. 516, 533, concerning the liability of a stockholder in a Minnesota corporation, the supreme court of the United States said:

"By becoming a member of a Minnesota corporation, and assuming the liability attaching to such membership, he became subject to such regulations as the state might lawfully make to render the liability effectual."

When the Callahans became stockholders in the Farmers State Bank, they voluntarily subjected themselves to such laws of this state governing banking as existed at that time and to such future laws as might be passed under the police power of the state. It is a fact, of which the court may well take judicial notice, that men who become sureties for others or incur liabilities which they do not expect to pay will often resort to every possible means to avoid payment of the liability. Stockholders in banks do not expect to pay the double liability. When they see a possibility of being obliged to pay that liability they frequently dispose of their stock, if they can do so, and thereby escape payment. They will sometimes dispose of their property for the purpose of defeating payment. The purpose of the statute is to meet that situation and compel payment when the liability arises. The statute is within the police power of the state. It does not violate any part of the fourteenth amendment to the constitution of the United States, nor section 18 of the bill of rights of the state of Kansas.

It is not reasonable to suppose that the Fidelity National Bank and Trust Company, the Kansas City correspondent of the Farmers State Bank of Kingman, did not know who were the stockholders and officers of the latter bank, and it is not reasonable to assume that the Kansas City bank did not know that Dan F. Callahan was a stockholder and an officer of the Kingman bank when the indebtedness sued on was created and when the mortgage sought to be foreclosed was given. At that time the Kansas City bank knew that the Kingman bank was insolvent, that it had been closed, and that a receiver had been appointed for it, and that payment of that bank's balance in the Kansas City bank had been made to the receiver. The circumstances surrounding the giving of the mortgage indicate that it was given by Callahan to evade the statute under consideration. The debt sued on was one owing to the Kansas City bank and the mortgage was given to secure the payment of that debt. For convenience the debt was made payable to the plaintiff and the mortgage was given to him. This puts the plaintiff in the position of one who acquires property from a person whom he knows does not have the power to dispose of it.

2. The plaintiff contends that the actions against the Callahans were barred by the laches of the receiver in commencing them. The bank was closed on January 16, 1924. The actions against the Callahans were commenced in May, 1925. The notes and mortgage were executed on July 1, 1924. The liability of the Callahans as stockholders was one created by statute. That would bring the actions to recover thereon within the second subdivision of the statute of limitations, section 60-3006 of the Revised Statutes. Such an action must be brought within three years from the time it accrues; but it is not the statute of limitations that is relied on by the plaintiff. He relies on laches. It was the Callahans that should have complained of the delay in commencing the actions against them, not the plaintiff.

In 21 C. J. 217 it is said:

"There is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another. Each case is to be determined according to its own particular circumstances. In other words, the question of laches is addressed to the sound discretion of the chancellor, and his decision will not be disturbed on appeal unless it is so clearly wrong as to amount to an abuse of discretion."

In *Hudson v. Herman*, 81 Kan. 627, 107 Pac. 35, this court said:

"Laches is an equitable bar to relief depending on all the circumstances of the case, and except in instances of clear error the judgment of the trial court denying its effectiveness will not be disturbed." (Syl. ¶ 7.)

To the same effect is *Dusenbery v. Bidwell*, 86 Kan. 666, 121 Pac. 1098.

Under the circumstances of this case there was no room for the application of the rule known as laches. The statute of limitations had not run against the actions by the receiver to recover from the Callahans. The actions could have been commenced sooner, but they were begun within a reasonable time after it was learned that they would be necessary. The plaintiff in his reply in the present action did not plead laches in the prosecution of the actions against the Callahans, nor was such laches called to the attention of the trial court, so far as the abstracts show. The statement is made in the brief for the receiver that the attention of the court was not called hereto.

In *Rooney v. McDermott*, 121 Kan. 93, 246 Pac. 183, this court said:

"Ordinarily, to be effective, laches must be pleaded; and where it is neither

pleaded nor proved, it is no defense to an action to recover an interest in land." (Syl. ¶ 2.)

The actions against Dan F. Callahan, and Dan F. Callahan as administrator of the estate of Ora J. Callahan, to recover the liability must have been prosecuted by the receiver. He was not personally interested in those actions; he represented the state when he took over the Farmers State Bank to wind up its affairs for the benefit of its creditors and of its stockholders. The receiver was not barred by laches from prosecuting the actions against the stockholders, nor from attempting to subject the land in controversy to the payment of the judgments that had been rendered against the Callahans.

The judgment is affirmed.