No. 29,391.

PAUL MASHETER, *Appellant,* v. C. E. CARMAN, Sheriff of Nemaha County, THE CITIZENS STATE BANK OF SABETHA, CHARLES W. JOHNSON, Receiver of the Citizens State Bank of Sabetha, *Appellees.*

(288 Pac. 543.)

Opinion filed June 7, 1930.

*James L. Haley,* of Sabetha, for the appellant.
*R. M. Emery, Jr.,* of Seneca, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to enjoin the sheriff from levying upon and selling certain shares of corporate stock to satisfy a judgment against C. L. Pautz, under these circumstances:

On July 25, 1925, Pautz acquired twenty-two shares of the Sabetha Agricultural Loan and Investment Corporation, and his ownership thereof was duly registered in the books of the company.

On November 24, 1926, Pautz and wife gave their promissory note to this plaintiff, Paul Masheter, for $1,600, due November 28, 1929.

On March 22, 1928, the Citizens State Bank of Sabetha became insolvent and Charles W. Johnson was appointed as its receiver. Pautz held thirty-five shares of stock in the bank, and on June 9, 1928, the receiver commenced an action against Pautz for $3,500 on his double liability.

On October 31, 1928, Pautz assigned his twenty-two shares in the loan and investment company to Paul Masheter as security for his $1,600 note given nearly two years before. He also gave Masheter a power of attorney to sign Pautz's name to any and all instruments necessary to sell, transfer and assign the twenty-two shares in any way Masheter saw fit, and authorized him to apply the proceeds toward the payment of the $1,600 note. No disposition of the twenty-two shares was made by Masheter, and they still stood in the name of Pautz on the books of the corporation when this action arose.

On September 17, 1929, judgment in favor of the receiver against Pautz on his double liability was rendered for $3,767; and on the execution threatened on that judgment this action followed. Plaintiff's petition alleged some of the pertinent facts, set up the assignment executed to him by Pautz as security for the $1,600 note, and prayed that the sheriff be enjoined from levying upon and selling the twenty-two shares of loan and investment stock, or that they be sold only subject to plaintiff's lien.

Defendants answered at length, detailing Pautz's ownership of stock in the insolvent bank and the judgment entered in favor of the receiver against Pautz on his double liability, and asserting the invalidity of Masheter's lien as against the receiver's right to subject the shares to execution on the judgment against Pautz to satisfy the double liability.

Plaintiff's demurrer to defendants' answer was overruled; plaintiff's prayer for an injunction was denied, and final judgment was entered in favor of defendants. Plaintiff appeals.

The pertinent statute reads:

"At any time after the closing of any incorporated bank if it shall appear to the receiver thereof that the assets of such bank are insufficient to pay its liabilities, it shall be the duty of such receiver to immediately institute proper proceedings, in the name of the bank, for the collection of the liability of the stockholders of such bank . . . *Provided,* That all transfers of property by a stockholder after the closing of any such bank and before the payment of the double liability as provided by this act, shall be absolutely void as against said double liability. . . ." (R. S. 9-156.)

This statute was amended in chapter 88 of the Laws of 1929, but our concern is with its terms as quoted. This court has held that the right of the receiver to look to the real estate of a stockholder of an insolvent bank for the satisfaction of the double liability cannot be defeated or postponed by the giving of a mortgage on the real estate to a third party after the bank became insolvent. (*Glenn v. Callahan,* 125 Kan. 44, 262 Pac. 583.) No distinction between a real-estate mortgage and the hypothecation of corporate stock is practicable within the purview of this statute. Upon the bank's insolvency and until the double liability is paid, the statute declares that all transfers of property—not merely of real property—shall be "absolutely void as against said double liability." Plaintiff cites *Alter v. Johnson,* 127 Kan. 443, 273 Pac. 167, in which it was held that the statute we are here concerned with did not create a lien on the property of a stockholder of an insolvent bank. Quite so; the statute did something more effective than that. It absolutely forbade all transfers of the stockholder's property until the double liability was satisfied—that all such transfers were absolutely void. Consequently the assignment of Pautz's loan and investment stock to secure the two-year-old note held by plaintiff, being made after the failure of the bank and before Pautz had satisfied the double liability on his bank stock, was a nullity as against the defendants' right to have the judgment for the double liability satisfied out of Pautz's property.

The judgment is affirmed.