No. 29,662.

Martha M. Palmer, as Executrix of the Estate of W. F. Palmer, Deceased, *Appellant*, v. Charles W. Johnson, Receiver of the Citizens State Bank of Sabetha, and The Citizens State Bank of Sabetha, *Appellees*.

(294 Pac. 874.)

Opinion filed January 10, 1931.

*James L. Haley*, of Sabetha, for the appellant.

*R. M. Emery, Jr.*, of Seneca, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action to establish a claim against the receiver of a failed bank. The trial court made findings of fact and rendered judgment for defendant. Plaintiff has appealed.

Briefly, the facts may be stated thus: For many years prior to March 21, 1928, when it was closed by order of its board of directors, taken charge of by the bank commissioner, and the defendant receiver was appointed, the Citizens State Bank of Sabetha had been transacting a general banking business, and F. C. Woodbury was the president and in active management and charge of the bank. On March 2, 1920, W. F. Palmer, who had previously transacted his banking business at the Citizens State Bank of Sabetha, having sold his farm, deposited $7,000 in that bank and received credit therefor on his account as a depositor of the bank. On June 29, 1920, there was withdrawn from his account the sum of $5,000 by a debit slip reading:

"Debit W. F. Palmer 5,000 to be loaned Citizens State Bank, Sabetha, Kan."

This was stamped with an inked stamp with the words:

"Paid Jun 29 1920 Citizens State Bank Sabetha, Kans."

On this slip the word "debit" and the words "Citizens State Bank, Sabetha, Kansas," were printed; the others were written, and the figures "5,000" and the words "to be loaned" were underscored. This debit slip was placed with the canceled vouchers of W. F. Palmer and given to him with his bank statement when it was next made up in due course of business. The written words on this debit slip were in the handwriting of F. C. Woodbury. On that same date, June 29, 1920, there was deposited to the credit of F. C. Woodbury in the bank the sum of $5,000. The deposit slip was in the writing of F. C. Woodbury and bore the notation, "W. F. Palmer." There is no showing that W. F. Palmer ever saw this deposit slip, or knew anything of it, or knew what account in the bank was credited with the $5,000 with which his account was charged. Just a month later, and on July 29, 1920, F. C. Woodbury executed a check payable to W. F. Palmer in the sum of $500, which Palmer indorsed on that day, and the amount of it was credited to his account. On April 4, 1921, there was deposited to the credit of W. F. Palmer $280, with a no-

tation, "interest." On April 10, 1922, a similar deposit and notation was made, and again on March 10, 1923. On March 7, 1924, a credit of $280 was made, with the notation, "bank." On March 28, 1925, $280 was credited to W. F. Palmer's account with the simple notation of "deposit." On September 8, 1925, a deposit of $140, on March 6, 1926, a deposit of $140, on September 14, 1926, a deposit of $140, on April 5, 1927, a deposit of $140, on November 1, 1927, $140 was credited to his account, with a notation, "Int. on farms," and on March 10, 1928, a deposit of $140. It appears to be agreed that these deposits to the credit of W. F. Palmer on his account were for interest on $4,000 at the rate of 7 per cent per annum, and were paid annually for a time and thereafter semiannually. These records indicate that the parties in some way lost track of $500 of the amount originally taken from the account of W. F. Palmer by the debit slips. Of that amount, which was $5,000, Palmer received $500 by the check of F. C. Woodbury on July 29, 1920, and received interest on $4,000 up until a few days before the bank closed, but the $500, representing the balance of the sum so debited to W. F. Palmer's account, is not shown to have been received by him, either from the bank or from Woodbury, nor is there anything to indicate that he ever received interest on it. Some time later F. C. Woodbury prepared and signed a receipt reading as follows:

"Sabetha, Kan., March 1, 1926. Received of W. F. Palmer the sum of ($4,000) four thousand and no/100 dollars, which is to be loaned for him beginning March 1, 1926, at 7 per cent, payable semiannually, and the time is to be indefinite for which the $4,000 is to be loaned by me. However, the semiannual interest must be paid when due each time."

This instrument was kept in the bank until after the bank closed, but it bore two indorsements on the back as follows:

"Interest paid in full to September 1, 1926. (Signed) W. F. PALMER. Interest paid and received by me in full to March 1, 1928. (Signed) W. F. PALMER."

After the bank closed W. F. Palmer went to the receiver, or his assistant in charge, to get insurance policies and other papers which he had in the bank, and the above receipt was given to him, together with his other papers. At that time W. F. Palmer's account showed a balance due him on deposit of $32.99. On May 28, 1928, W. F. Palmer filed with the receiver a formal claim against the bank for $4,000, being a part of the money taken from his account by the debit slip of June 29, 1920, and for the balance of $32.99

due him on his account. Soon after filing this claim W. F. Palmer died, leaving a will, and his widow, Martha M. Palmer, was appointed as executrix of his estate. Thereafter, in looking through the papers pertaining to her husband's business with the bank, the discrepancy of $500 was found, and on January 27, 1930, she filed with the receiver an amended claim for $4,500, instead of the $4,000 of the original claim, and asked interest on $500 of this amount from June 29, 1920.

At the trial of this action no one testified who could give any explanation of the various transactions other than what the record showed. The only two witnesses were the plaintiff—who is the widow of W. F. Palmer, deceased, and she knew nothing about it except what was shown by her husband's bank book and by the bank's statements and vouchers which he had received from the bank from time to time, and the receipt dated March 1, 1926, received after the bank failed—and the assistant receiver of the bank, who identified the bank records and explained his interpretation of them.

The real question at issue in the court below and here is whether W. F. Palmer's transactions, as above outlined, were with the Citizens State Bank of Sabetha, or with F. C. Woodbury personally. In the findings made by the trial court, among other things, appeared the following:

"The court finds that said $5,000 never did come into the possession of the bank, but came into the possession of F. C. Woodbury on June 29, 1920."

Appellant specifically objects to that finding. It seems clear to us that it is erroneous. The only evidence in the record as to who got the money which was taken out of W. F. Palmer's account by the debit slip is the debit slip itself. That is in writing, and this court can examine it and determine its meaning and effect as well as the trial court. (See *Milberger v. Veselsky,* 97 Kan. 433, 435, 155 Pac. 957; *Mathewson v. Campbell,* 91 Kan. 625, 627, 138 Pac. 637, and cases there cited; also *Washbon v. Bank,* 86 Kan. 468, 121 Pac. 515.) It shows on its face that the Citizens State Bank of Sabetha, Kan., took this money from W. F. Palmer's account. It is true these words are printed on the slip, but they are not to be held meaningless for that reason. We note the word "debit" is also printed on the slip, but it was effectual to take the money from Palmer's account, and it must be held that the words "Citizens.

State Bank, Sabetha, Kan.," were effective to show to whom the money went in the absence of any other notation on the debit slip with respect to that point, or any parol explanation. The trial court found that there was no evidence explaining that matter other than the slip itself and the circumstances of the case, and that "The court is unable to determine from the evidence whether or not such printing is the signature of the bank." We have no difficulty in determining that from the debit slip itself. From the very nature of things it was essential that it show not only that the money was charged to Palmer's account, but for whose benefit it was charged.

The court evidently gave considerable weight to the fact that on the same day F. C. Woodbury's account in the bank was credited with $5,000, the exact amount that was charged to the Palmer account by the debit slip, and that the deposit slip showing that deposit to F. C. Woodbury's account had a notation thereon, "W. F. Palmer." As previously stated, there is nothing in the record to show that Palmer ever saw this deposit slip, or was informed in any manner as to what account in the bank was credited with the sum taken from his account. In the natural course of things he would not know or be informed of that. In fact, it is immaterial to him. The Citizens State Bank took this money to be loaned, and if the bank desired to handle that for the purpose of loaning it through the personal account of its president and active managing officer, F. C. Woodbury, that was the bank's business and not Palmer's. With respect to who paid the interest that was credited to Palmer's account on the $4,000 the court's finding reads:

". . . and that thereafter [June 29, 1920] interest was paid on $4,000 of said sum [$5,000], at the rate of seven per cent per annum, or $280 per year, and that said payments were credited to the Palmer account in the bank by F. C. Woodbury; that the evidence does not disclose where Woodbury got the money with which to pay the interest, and the evidence tends to prove that some of it, at least, might have been paid by the juggling of funds carried by Woodbury and other officers of the bank as special funds, but that there is no evidence to show that the bank, itself, ever paid any interest."

Appellant complains of this finding. While we regard it as of secondary importance, there appears to be reason for the complaint. The assistant receiver's testimony bore on that point. He was unable to find from the record at the bank that the interest was paid by the bank on this money and charged to an account of interest

paid, but the items of interest were charged to different accounts which were kept by the bank or its officers for the rather obvious purpose of juggling accounts so as to prevent a direct showing on an interest-paid account of the bank. While the entries were made sometimes by Woodbury, or by other officers or bookkeepers in the bank, we find no evidence that any of this interest was charged personally to Woodbury, and the fact that it was charged to some of these other accounts, which were either wholly or partially bank accounts as distinct from individual accounts, would have justified a finding that they were in fact paid by the bank and the record kept in such a way as not to show a direct payment of interest by the bank, and thus avoid criticism by bank inspecting officials.

Possibly it is worthy of note that the first interest payment was made April 4, 1921, and subsequent interest payments seem to make it clear that interest was computed from March 1, 1920. The $7,000 was deposited by Palmer in the bank on March 2, 1920, so it seems clear that Palmer got interest on $4,000 from the date of his deposit rather than from June 29, 1920. In other words, this tends to show that the bank took this money as soon as it was deposited there instead of the date of the debit slip. But perhaps this is not material. The interest was paid annually for a time. The Woodbury receipt bearing the date of March 1, 1926, indicates that the interest be paid semiannually from March 1, 1926, but in fact the actual interest payments indicate that the change from annual to semiannual payments operated from March 1, 1925, for in September, 1925, the semiannual interest was paid, and again in March, 1926, and later.

From what has been said it necessarily follows that the court's finding that Palmer's transaction was an individual one with Woodbury, and not a bank transaction, is not sustained by the record evidence in this case, which is the only evidence bearing on that question, and that the court's judgment, based on that finding, must be set aside.

With respect to the $500 item added by the amended claim, the trial court found it could not be allowed for the reason that the claim for this additional item was not presented to the receiver until more than a year after his appointment. On that point the ruling of the court below must be affirmed. The statute specifically provides that the claims must be presented within a year. (R. S.

9-130, as amended by Laws 1927, ch. 88; R. S. Supp. 1930, 9-130; *Almquist v. Johnson,* 130 Kan. 417, 286 Pac. 200.) It is argued that this is but an amendment to the original claim. Passing the question whether claims might be amended by increasing them, it seems quite clear that this was presented as a separate and independent item, for the claimant asks interest on that item separately from June 29, 1920. It seems clear, also, that it was handled in some way different from the $4,000 item, for no interest was ever paid on it at any time, either before or after executing the receipt dated March 1, 1926. While the records of the bank do not show that this sum was paid to W. F. Palmer, the fact that it was handled in such a way that it became a separate item and no interest was paid on it for nearly eight years, and that Palmer when he was living and made his claim against the receiver did not include it, forces us to treat it as a separate item as distinct from an amendment of the claim which was filed in time. Considering it as a separate item, it is clear that it is barred by the statute, which requires claims to be presented within one year.

Prior to the trial of this case the claim of the plaintiff had been allowed on the sum of $32.99, hence there is no longer any controversy over that.

The result is that the judgment of the court below must be modified, with directions to allow the claim for $4,000 with interest at seven per cent since March 1, 1928. It is so ordered.