No. 30,133.

ESTELLE CONRAD, *Appellee*, v. CHARLES W. JOHNSON, as Receiver of the Citizens State Bank of Sabetha, *Appellant.*

(4 P. 2d 767.)

Opinion filed November 7, 1931.

W. E. Archer, of Hiawatha, for the appellant.

Harry A. Lanning, of Seneca, Alcid Bowers and W. E. Reese, both of St. Joseph, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on two notes for the face value of which plaintiff had been defrauded by F. C. Woodbury in his capacity as president of the Citizens State Bank of Sabetha. Woodbury had long pursued a course of frenzied financiering which eventually landed him in the penitentiary (*State v. Woodbury*, 132 Kan. 22, 294 Pac. 928) and completely wrecked the institution of which he was the head. A partial list of lawsuits

provoked by this bank's insolvency includes *Trees v. Johnson*, 130 Kan. 681, 288 Pac. 587; *Masheter v. Carman*, 130 Kan. 856, 288 Pac. 543; *Citizens State Bank v. Burner*, 131 Kan. 286, 291 Pac. 739; *Palmer v. Johnson*, 132 Kan. 161, 294 Pac. 874; *Shintaffer v. Bell*, ante, p. 101.

It appears that in 1921 certain persons named Strahm owed the Citizens State Bank about $34,400 evidenced by a series of promissory notes secured by a second mortgage on 240 acres of Nemaha county land. On March 1, 1922, those notes were renewed, payable in one year, the name of the payee being in blank, and secured by a renewal of the second mortgage.

On the same date Woodbury, as president of the bank, sold one of these notes for $2,000 to this plaintiff, inserting her name therein as payee, representing to her that it was secured by the bank's mortgage—an assurance on which she relied. From time to time thereafter Woodbury paid her interest on this note according to its tenor until the bank failed in 1928. However, unbeknown to plaintiff, on May 6, 1924, the Strahms conveyed the land to Woodbury and two other persons; and on February 26, 1926, the bank by Woodbury released the mortgage which secured the payment of this series of notes, including the one owned by plaintiff.

It also appears that on February 13, 1925, John and Maggie Hall owed the Citizens State Bank the sum of $3,000 as evidenced by their promissory note of that date. Shortly thereafter Woodbury, as president, represented to plaintiff that the Halls' note was secured by a first mortgage on real estate in favor of the bank. In reliance on this representation plaintiff purchased the note from the bank, paying $3,000 for it. The representation was wholly false; the note was unsecured and worthless; and the makers were insolvent. The bank paid the interest on the note up to and including the amount due on February 13, 1927, at which time Woodbury represented to plaintiff that the bank had obtained a deed from the Halls covering the land, which according to his pretense had been mortgaged to secure the payment of the note, and that he would cause foreclosure proceedings to be instituted thereon. On March 8, 1928, Woodbury informed plaintiff that he had realized on the Halls' note, and then offered to trade her a note for $6,000 which the bank held against Duff and Moulton, makers, in exchange for the Halls' note and other considerations. Plaintiff accepted Woodbury's offer and the Duff and Moulton note was delivered to her.

The bank failed on May 22, 1928, and shortly thereafter plaintiff learned that the security for the Strahms' note for $2,000 had been released. She next found herself defendant in a lawsuit brought by one William Bestwick, who claimed to be the owner of the Duff and Moulton $6,000 note which she had received in exchange for the Halls' and Strahms' notes. This rival claimant for the Duff and Moulton note prevailed, it being adjudicated on January 27, 1930, that he was its owner, and in conformity with that judgment plaintiff surrendered the Duff and Moulton note to him.

Shortly thereafter, on March 22, 1930, plaintiff brought this action against the receiver of the insolvent Citizens State Bank of Sabetha, reciting at length the pertinent facts briefly outlined above. One paragraph of her petition read:

"Plaintiff further states that said F. C. Woodbury concealed said fraud and that plaintiff did not discover said fraud and fraudulent acts and did not know that said representations made by said F. C. Woodbury, as president and managing officer and agent of said defendant bank, were false and fraudulent until on or after March 24, 1928, and until within two years prior to the commencement of this action."

Plaintiff prayed judgment for the face value of the Strahms' note for $2,000 and of the Halls' note for $3,000 and interest thereon.

The receiver's answer amplified the facts alleged in plaintiff's petition, but raised no material issue of fact. Some evidence was adduced by the parties, but the cause was virtually tried on the pleadings and agreed statement of facts, the most important of present consequence being the failure of the bank on March 22, 1928, the appointment of the receiver on the same day, and the failure of plaintiff to file with the receiver within one year any claim based upon the causes of action which were the subject matter of this lawsuit. One paragraph of plaintiff's reply alleged that plaintiff had filed her action—

"While said defendant receiver had sufficient money in his hands, as receiver of said bank, to pay said claims *pro rata* with other claims against said bank and said receiver does now have sufficient money in his hands, as receiver of said bank, to pay said claims *pro rata* with other claims against said bank."

Judgment was entered in plaintiff's behalf. The receiver appeals, relying on the statute which governs the winding up of the affairs of insolvent banks through receivership. The pertinent provision of that statute reads:

"All claims of depositors and other creditors must be filed with the receiver within one year after the date of his appointment, and if not so filed

such claims shall be barred from participation in the estate of such bank." (R. S. 1930 Supp. 9-130.)

To uphold the judgment in this case counsel for appellee makes a critical analysis of the term "creditor." He argues that at the time the receiver was appointed plaintiff was not a creditor of the bank and did not then have any claim she knew of to file with the receiver. It is quite correct that a disputed claim for damages sounding in tort is not a debt until it is prosecuted to judgment, and in that respect plaintiff was not strictly a creditor of the bank until the result of her lawsuit with Bestwick was determined. However, under the statute quoted above we are inclined to hold that "other creditors" means any persons having claims of any kind against the bank which lawfully can or should be paid out of its assets which come into the hands of the receiver.

In *Henley v. Myers,* 76 Kan. 723 (affirmed in 215 U. S. 373), 93 Pac. 168, 173, in discussing the meaning of the words "debt" and "creditor," it was said that the latter "may mean one having any character of claim against another." (p. 728.)

In 15 C. J. 1370, after defining a creditor as "one who holds some contractual obligation against another," we find the following:

"It further denotes a person to whom any obligation is due; a person to whom is owed a debt or obligation to pay money for which an action or suit would lie; . . . one who has a valid cause of action; one having a legal right to damages capable of enforcement by judicial process." (pp. 1372-1373.)

In 2 Words and Phrases, 1714, it is said:

"A creditor, in its strict, legal sense, is one who voluntarily trusts or gives credit to another for money or other property, but, in its more general or extensive sense, is one who has a right by law to demand and recover of another a sum of money on any account whatever. . . . The word is susceptible of latitudinous construction. (Citations.)"

In the enactment of R. S. 1930 Supp. 9-130, the legislature was chiefly concerned with what it believed to be the greater good to the greater number; and in its wisdom it enacted this special limitation for the filing of claims with the receiver of an insolvent bank, to the end that its affairs may be promptly wound up and its many victims who do present timely claims upon its fragmentary assets may be paid. This court would not be justified in what would virtually be a judicial amendment to the statute—the interpolation of a proviso that the statutory limit of one year for the filing of claims of depositors and other creditors shall not be a bar to a claim

filed after one year where such claim is based upon a tortious act of the bank whose consequences did not result in making a creditor in a strict sense of the injured party until more than one year had elapsed after the appointment of the receiver.

This question is not new. We have had to deal with certain phases of this statute heretofore. In *Almquist v. Johnson,* 130 Kan. 417, 286 Pac. 200, it was said:

"That the legislature has the right and power to increase or reduce the time for filing claims and to lengthen or shorten the period of limitation statutes is not a debatable question in Kansas, as such changes have been held to affect the remedy only and not to impair rights or obligations. (Citations.)" (p. 418.)

In a recent case which arose out of the insolvency of this same bank (*Palmer v. Johnson,* 132 Kan. 161, 294 Pac. 874) a creditor did file his claim against the receiver within one year in conformity with the statute, but he sought to amend his claim by adding an item of $500 thereto after the year allowed for filing claims had expired. The amendment was disallowed by the trial court and this court approved the ruling. In the syllabus it was said:

"Under R. S. 1930 Supp. 9-130, the creditor of a failed bank must present his claim against the receiver within one year after the appointment of the receiver in order to participate in the estate of such bank. *Held,* it was not error to disallow a claim presented as a separate item later than one year after the appointment of the receiver." (Syl. ¶ 3.)

Appellee also invokes the familiar rule of law that fraudulent concealment postpones the running of the statute of limitations. But the receiver committed no fraudulent concealment. When Bestwick commenced his action against this plaintiff to get possession of the Duff and Moulton note she was sufficiently apprised of the facts to put her upon her inquiry as to the fraud of Woodbury and of the bank. She could not toll the statute by simply letting matters drift until the conclusion of her lawsuit with Bestwick. She could have impleaded the bank in that litigation. She could have filed a claim with the receiver in the nature of a caveat without waiting the result of the Bestwick litigation.

This court has not overlooked the allegation that when this action was begun the liquidation of this particular bank and the distribution of its assets had not progressed so far that plaintiff's *belated* claim could not be taken into account and a *pro rata* share of the bank's assets accorded toward its satisfaction. But the statute can-

not be interpreted to mean that under such situation its specific limitation may be disregarded.

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.