COMMERCE TRUST COMPANY, a Corporation, Appellant, v. THE FARMERS' EXCHANGE BANK OF GALLATIN, In Liquidation, S. L. CANTLEY, Commissioner of Finance, and JOSEPH N. MARTIN, Special Deputy Commissioner of Finance in Charge.—61 S. W. (2d) 928.

Court en Banc, June 10, 1933.

*Dudley & Brandom* and *H. G. Leedy* for appellant.

982

*Ed C. Hyde* and *Earle W. Frost* for respondents.

COOLEY, C.—This case was tried in the Circuit Court of Daviess County and from a judgment against it the plaintiff appealed to the Kansas City Court of Appeals. That court, in an opinion reported in 52 S. W. (2d) 406, held that the judgment should be reversed and the cause remanded with directions to the trial court

to allow plaintiff's claim as a preferred one but, deeming its decision in conflict with that of the St. Louis Court of Appeals in Bowersock Mills & Power Co. v. Citizens' Trust Co., 298 S. W. 1049, certified the cause to this court for determination. We adopt the following statement of facts made by the Court of Appeals:

"This is an action to recover the proceeds of a collection made by the Farmers' Exchange Bank of Gallatin, now in liquidation, immediately before it suspended business, which proceeds are claimed to constitute trust funds in the possession of said bank and the Deputy Commissioner of Finance in charge of its assets and affairs.

"The trial court found that the claim of plaintiff was not filed with the Commissioner of Finance, and that this suit was not begun, within the time required by law and denied plaintiff any right of recovery.

"It is admitted that the following facts contained in the statement in plaintiff's brief are true:

" 'On March 3, 1926, plaintiff sent to defendant bank for collection and remittance various checks drawn by depositors of defendant bank against their respective accounts therein aggregating the sum of $2,371.02. On March 4, 1926, these checks were charged by the defendant bank to the accounts of the various drawers of the same, and the aggregate amount thereof was attempted to be remitted to plaintiff by defendant bank drawing its remittance draft against its balance with the Fidelity National Bank and Trust Company of Kansas City. On the same day the defendant bank suspended business, and its remittance draft for that reason was not paid. The accounts of the various depositors against which the checks were drawn were in excess of the amounts of the checks respectively charged to such accounts, except one account. Plaintiff asks no recovery for the check charged to that account inasmuch as settlement of the same has been otherwise effected. The record also shows that other items have been eliminated by agreement. At the time of the charging of the checks to the depositors' accounts, and at the time it suspended business, and its affairs were taken in charge by the Commissioner of Finance, the defendant bank had sufficient available cash to pay all of the checks collected in full, including a deposit with the Fidelity National Bank and Trust Company, against which the remittance draft was drawn, in excess of the amount of such draft.'

"The facts further show that the claim was not filed until approximately a month after the time required for the filing of those claims required to be filed with the Commissioner of Finance and that this suit was not filed until two or three days after the time required by Section 5337, Revised Statutes 1929, for the filing of suits.

"Defendant in its brief concedes that the nature of the claim would entitle it to a preference, in the reduced amount above indicated, if

plaintiff had complied with the statutory requirements relating to the filing of claims with the Deputy Commissioner of Finance and the bringing of suits thereon.''

■ In its petition plaintiff attempted to excuse the belated filing of its claim with the Special Deputy Commissioner of Finance on the ground that he had, after the claim was filed, waived that requirement of the statute, and also alleged generally that it had ''duly complied with all requirements of law relating to the filing of its claim.'' But while so alleging it further pleaded that its right to recover was not limited by the provisions of the statute relating to the filing of claims since the amount claimed represented a trust fund belonging to plaintiff and was not a claim of a *creditor* of the insolvent bank. That contention was and is its chief reliance. It was sustained by the Court of Appeals.

We are unable to agree with the conclusion of the learned Court of Appeals. It is true that, according to the now settled doctrine in Missouri, the relation between the plaintiff and the defendant bank, under the facts shown, was that of principal and agent or *cestui que trust* and trustee, rather than that of creditor and debtor, and that the latter relation, strictly speaking, did not exist between them with respect to the proceeds of the checks sent to defendant bank for collection and remittance. [See Bank of Poplar Bluff v. Millspaugh, 313 Mo. 412, 281 S. W. 733; Federal Reserve Bank v. Millspaugh, 314 Mo. 1, 282 S. W. 706.] Defendant bank did not by the transaction with plaintiff take title to the checks sent to it for collection and remittance nor, under the rule in this State, of the proceeds thereof and become indebted to plaintiff for a like amount as in the case where a person makes a general deposit in a bank. But while in cases such as this the money sought to be recovered is of the nature of a trust fund and on that theory the claimant is entitled to preference over general creditors, it is usually impossible in the liquidation of an insolvent bank for the claimant to point out the specific money that belonged to him or any specific property into which his money has been converted. It was not attempted and could have been done in this case. It is not necessary in order to entitle a claimant in such situation to a preference that he should be able so to do. The preference must be worked out in such cases, however, not by giving the claimant the specific money that originally belonged to him, which cannot be returned because commingled by the bank with its own money and impossible to identify, but on principles of equity by giving him in lieu thereof a like amount out of any assets of the bank in the hands of the liquidating commissioner.

■ It is now well settled in this State that in cases of this nature where money arising from receipt of a trust fund has been mingled by a bank with its own funds arising from general deposits and used in the general business of the bank so that it has become indistin-

guishable and the bank becomes insolvent, if it be made to appear that the assets of the failed bank coming into the hands of the liquidating commissioner have been augmented by the trust fund, all of the assets of the bank in the commissioner's hands may be impressed with the trust to the extent they have been enriched by the trust fund so wrongfully commingled, and to that extent the *cestui que trust* will be allowed a preference over general creditors and entitled to payment out of the general assets of the bank in the commissioner's hands. [See State and Becker, Secretary of State, v. Farmers' Exchange Bank of Gallatin, 331 Mo. 689, 56 S. W. (2d) 129; State ex rel. Gentry v. Page Bank of St. Louis County, 322 Mo. 29, 14 S. W. (2d) 597; Porterfield v. Farmers' Exchange Bank of Gallatin, 327 Mo. 640, 37 S. W. (2d) 936; Mann v. Bank of Greenfield et al., 323 Mo. 1000, 46 S. W. (2d) 874; Huntsville Trust Co. v. Noel et al., 321 Mo. 749, 12 S. W. (2d) 751; Harrison Twp., Vernon County, et al. v. People's State Bank et al., 329 Mo. 968, 46 S. W. (2d) 165; Nichols v. Bank of Syracuse, 220 Mo. App. 1019, 278 S. W. 793.] It follows that even though the bank did not have title to the trust fund and such fund is therefore not to be considered as an asset of the bank in the hands of the liquidating commissioner, who could take no better title than the bank had, still the allowance and payment of the *cestui que trust's* claim necessarily affect and are drawn into the settlement and winding up of the bank's affairs and the distribution of its assets.

▮ The statute relative to the Department of Finance and to banking institutions was designed to and does provide a complete and exclusive scheme for the liquidation of insolvent banks and the distribution of their assets. [State v. Farmers' Exchange Bank of Gallatin, supra; Bowersock Mills & Power Co. v. Citizens' Trust Co., supra.] The provisions for the presentation and allowance of claims are found in Sections 5333 to 5337, inclusive, Revised Statutes 1929 (2 Mo. Stat. Ann. p. 7557), et seq., Section 5333 reads:

"When the commissioner shall have taken possession of such corporation or private banker, and shall have determined to liquidate its affairs, he shall notify all persons who may have claims against such corporations or banker to present the same to him and make proper proof thereof within four months from the date of said notice and at a place specified therein, and shall specify in said notice the last date for presenting said proofs. He shall cause said notice to be mailed to all persons whose names appear as creditors upon the books of the corporation or banker. He shall also cause said notice to be inserted weekly in such newspapers as he may direct for three consecutive months, the first insertion thereof to be published more than ninety days before the last day fixed in said notice for presenting proof of claims. After the date specified in such notice as

the last date for presenting proof of claims the commissioner shall have no power to accept any claim.''

Section 5334 provides for the making and filing of lists ''of all claims duly presented,'' specifying the name of the claimant and the nature and amount of the claim, within ten days after the last date fixed in ''said notice to creditors'' to present and make proof of claims.

Section 5335 provides that within thirty days after the last date fixed ''in said notice to creditors to present and make proof of claims,'' objections to any claim may be filed with the commissioner by any party interested, and prescribes the commissioner's duties thereupon.

Section 5336 prescribes the commissioner's duties in the matter of approving and rejecting claims presented to him. It uses the words ''claims'' and ''claimants'' but the word ''creditor'' does not appear therein. It contains, *inter alia,* the following provision: ''The commissioner shall not determine priorities, in approving or rejecting claims; but approved claims shall be presented to the circuit court pursuant to Section 5339 for determination as to their priority of payment.''

Section 5337 authorizes a ''claimant'' whose claim has been filed and has not been approved by the commissioner to institute an action thereon within six months after expiration of the time within which the commissioner is required to approve or reject claims, and further provides: ''No action shall be maintained against such corporation or banker while the commissioner is in possession of its affairs and business unless brought within the period of limitation specified in this section. In all actions or proceedings instituted against such corporation or banker while the commissioner is in possession of its property and business, the plaintiff shall be required to allege and prove that the claim upon which the action is instituted was duly filed and that sixty days have elapsed since the expiration of time for filing said claims and that said claim has not been approved.''.

By Section 5339, ''at any time after the date fixed by the commissioner for the presentation of claims,'' the circuit court or judge thereof in vacation may by order authorize the commissioner to declare ''out of the funds remaining in his hands after the payment of expenses,'' one or more dividends, specifying in the order ''what claims, if any, are entitled to priority of payment, and shall direct the commissioner regarding the manner of payment of such prior claims,'' and by like order a final dividend may be declared at any time after the expiration of eight months from said date fixed for the presentation of claims.

Under Section 5340, when the assets of the corporation have been distributed and unclaimed sums deposited as by law provided, and

"more than one year has elapsed since the last required publication of notice to creditors to present their claims," the court may make an order affirming the disposition of unclaimed sums and declaring the corporation dissolved and its corporate existence terminated.

■ It seems to us clear that these statutory provisions contemplate and were intended to require the prompt presentation and disposition of all claims of whatever character against an insolvent bank, at least where, as in this and similar cases, the claim is not for possession of specific property but one in which the claimant seeks to recover and practically can only recover by an award to be paid out of the assets in the hands of the liquidating commissioner, including those to which the bank had title. Until all such claims are presented and determined the bank's assets cannot be properly distributed and its affairs wound up.

■ We think the learned Court of Appeals too strictly and narrowly construed the word "creditors" as used in the sections of the statute above referred to and allowed it undue effect as characterizing the kind of claims required by the statute to be filed with the commissioner. The word "creditor" may and often does have the restricted meaning thus attributed to it, viz., the antonym or correlative of "debtor," implying the existence of the relation, technically speaking, of debtor and creditor between the parties. But in a larger sense it may and not infrequently has been held to mean more than a person to whom money may be owing as a *debt* in the strict sense of that term. In 1 Bouvier's Law Dictionary, Rawles' Third Revision, page 726, the word "creditor" is thus defined: "He who has a right to require the fulfillment of an obligation or contract. A person to whom any obligation is due. New Jersey Ins. Co. v. Meeker, 37 N. J. L. 300. See Pettibone v. Roberts, 2 Root (Conn.) 261."

In Conrad v. Johnson, 134 Kan. 120, 4 Pac. (2d) 767, the court had under construction the words "other creditors," as used in the bank liquidation statute of Kansas. The statute provided that "all claims of depositors and other creditors must be filed with the receiver within one year after the date of his appointment, and if not so filed such claims shall be barred from participation in the estate of such bank." The claimant's demand sounded in tort and had not been reduced to judgment prior to the receivership. The court said that she was "not strictly a creditor of the bank until the result of her lawsuit with Bestwick was determined," but held that under the statute " 'other creditors' means any person having claims of any kind against the bank which lawfully can or should be paid out of its assets which come into the hands of the receiver." The claim in the Conrad case did not involve the question of a trust fund. But since in this State in cases such as the one at bar the trust is

impressed upon the bank's assets coming into the commissioner's hands, and the claim, if allowed, is payable out of such assets, the definition has some applicability. For further illustrative definitions of the term "creditors," see 15 Corpus Juris, page 1370, and 2 Words & Phrases (1st Series), pages 1713, 1714, 1718-21. Among the definitions given in Corpus Juris are these: "Any one who has a right to require the fulfillment of an obligation or contract for the payment of money;" "a person to whom a sum of money or other thing is due by obligation, promise or in law;" "any one who owns a claim or demand." In 2 Words & Phrases, page 1714, it is said, giving citations:

"A creditor, in its strict, legal sense, is one who voluntarily trusts or gives credit to another for money or other property, but, in its more general or extensive sense, is one who has a right by law to demand and recover of another a sum of money on any account whatever. . . . The word is susceptible of latitudinous construction."

Keeping in mind the scope and purpose of our bank liquidation statute as well as the context, we think the word "creditors" in the sections referred to was used in the general sense above indicated rather than with the narrower meaning of one to whom a debt, in the strict sense of the term, is owing and that it includes claimants in the situation of plaintiff in this case. While defendant bank did not owe plaintiff a debt, strictly speaking, plaintiff certainly had a claim against the bank which, under the conceded facts, the bank was under obligation to pay in money. Section 5333, supra, provides, not by implication but in positive language, that *all persons who may have claims against the bank* shall be notified to present them to the commissioner and make proof thereof. Instead of that language being modified and restricted to a particular class of claims by the subsequent reference in the statute to the "notice to creditors," we think the term "creditors" thus used was intended and should be construed to mean the persons "who may have claims against the bank," previously mentioned in the statute. This conclusion, in our judgment, is fortified by other provisions of the statute and accords with its evident purpose. Section 5337 provides a limitation period within which actions to establish claims rejected by the commissioner may be brought and provides that: "No action shall be maintained against the bank while the commissioner is in charge of its affairs and business unless brought within such period," and further that "in all actions and proceedings" instituted against the bank while the commissioner is in possession of its property and business the plaintiff must allege and prove that the "claim upon which the action is instituted" was duly filed, etc. The commissioner is required to present approved claims to the circuit court for determination as

to their priority of payment, implying that claims in which priority of payment over claims of general creditors is sought are to be presented to the commissioner. And as pointed out above, provision is made for the determination by the circuit court of questions of priority and, where the bank cannot continue in business, for the distribution of its assets, the winding up of its affairs and its dissolution, all within a much shorter time than the limitation period applicable to demands of the nature of that asserted by plaintiff herein, if they are not included in the claims that must be presented to the commissioner. As said by the St. Louis Court of Appeals in Bowersock Mills & Power Co. v. Citizens' Trust Co, supra, it is to the public interest that the affairs of an insolvent bank be wound up as quickly as possible, and we agree with that court that the provisions of the liquidation statute evince a purpose to compel the presentation of all claims within the time therein prescribed "so that all claims may be determined with reference to the rights and equities of each and every creditor," and in order that delay in the settlement of the insolvent bank's affairs, detrimental to the welfare of the community, may be avoided.

Reference is made by appellant and by the Kansas City Court of Appeals in its opinion to Section 5328, Revised Statutes 1929, requiring the commissioner upon taking possession of a bank to notify persons claiming or appearing upon the bank's books to be owners of "any personal property theretofore left in the possession of such corporation or banker as bailee or depository for hire" to remove "such personal property" within a time specified in the notice, and if it be not removed to apply to the court or the judge in vacation for directions as to its disposition.

A decision of the Surrogate's Court in New York, In re Forrest's Estate, 249 N. Y. Supp. 766, is cited in support of the suggestion that said Section 5328 has some bearing upon the question at issue. In that case the proceeding was in the nature of a discovery proceeding for the delivery of withheld property pursuant to a provision of the Surrogate's Court Act. The fund in question was held to have been accepted as a special deposit in the nature of a bailment. A section of the New York banking law similar to our Section 5328 is referred to in the opinion. It is held that a discovery proceeding in the Surrogate's Court "is now an appropriate remedy to secure possession of withheld property in the possession of persons and corporations" and further, that "the question of bank creditors and of priority does not enter into this case. No property over which the Supreme Court has obtained jurisdiction by virtue of the liquidation and the Banking Law is interfered with." Some other New York cases are cited in which on the facts therein the fund in controversy seems to have been treated as of the nature of a bailment and

in which it was held the claimants were not required to proceed under the bank liquidation statutes.

■ While, as we have indicated, defendant bank did not acquire title to the proceeds of the checks sent to it for collection, it was not, in our opinion, a bailee of such funds within the meaning of said Section 5328. The commissioner could not have proceeded under that section and its provisions are not applicable to the situation presented by the facts herein.

■ We are inclined to think the cases cited in support of the contention that appellant was not required to file its claim with the commissioner and to bring its action within the time limited by Section 5337, supra, are distinguishable from the instant case on the facts and the precise question involved. But whether so or not we shall not take space to analyze them because, with the highest regard for the courts which promulgated them, if and in so far as the conclusions they announce tend to sustain said contention, we decline to follow them.

It is said in appellant's brief that if the statute relative to filing of claims applies it was necessary for defendants to show "that the requirements had been complied with," and that there was no proof of such compliance. We gather from appellant's printed argument that this point relates to the notice required by Section 5333 to be given. Respondents' additional abstract shows that the statutory notice by publication was given. It is not suggested and we do not perceive wherein this notice failed to measure up to the statutory requirement. As plaintiff's name did not appear as a creditor upon the books of defendant bank notice to it by mail was not called for. There is no suggestion that plaintiff's delay in filing its claim was due to lack of information that the bank had failed and had been taken over by the commissioner. It learned those facts immediately when payment of the draft sent to it was refused.

■ Another point now made by appellant is that the commissioner waived its failure to file the claim in time. This contention seems to be based on a letter written to plaintiff by Joseph N. Martin, special deputy commissioner in active charge of the liquidation. Plaintiff did not file its claim until about August 24, 1926, approximately a month after the expiration of the time fixed by the commissioner. No explanation of that delay was offered by plaintiff's pleading or evidence. On November 22, 1926, Martin wrote plaintiff that its claim had been approved and the question of preference referred to the court. The claim had in fact been rejected by said special deputy because not filed in time and the statement in his letter that it had been approved was an error. Plaintiff was so notified but just when is not shown. However, said error of the commissioner had, of course, nothing to do with the *untimely filing of the claim,*

and it is not claimed that it had anything to do with the belated filing of plaintiff's suit. Plaintiff pleads that after being first notified that its claim had been approved it was notified by Martin that it "would not be recognized or paid unless first established in court." It made at the trial and now makes no contention that Martin's letter or notification of November 22 had anything to do with its failure to file suit within the statutory time limit. At the trial its attorney stated that "the special deputy disallowed the claim for the reason, so he stated, that the claim wasn't filed within time, and therefore he couldn't entertain it." Obviously, even if the commissioner under any circumstances had authority to waive the timely filing of claims, which under the statute he certainly cannot do after the time for filing them has expired, there was no waiver in this case, nor does any question of estoppel to interpose the statute in opposition to plaintiff's claim arise. Bartlett v. McCallister, 316 Mo. 129, 289 S. W. 814, and Macon County v. Farmers' Trust Co., 325 Mo. 784, 29 S. W. (2d) 1096, cited by appellant, lend no support to its claim of waiver.

It is urged that "a court in the exercise of its general equity jurisdiction may allow claims not even presented in the furtherance of justice." Without determining whether, under special circumstances, noncompliance with the statutory requirements relative to the time of filing claims and bringing suits might be excused on that theory, it is sufficient to say that it can have no application in this case. Plaintiff did not plead or offer to prove any reason for its noncompliance with the statute except that it contended that the statute does not apply to its claim. The court cannot, because of plaintiff's misinterpretation of the statute, relieve it of the consequences of its noncompliance therewith.

In our opinion the circuit court correctly decided the case and its judgment is affirmed.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the Court en Banc. All of the judges concur, except Leedy, J., not sitting.