FEDERAL DEPOSIT INSURANCE CORPORATION, As Liquidating Agent for Republic Bank of Kansas City, Plaintiff,

v.

Preston KERR, Presco Industries, Inc., d/b/a Ellett Brothers, Ray Adams, Trustee for Ellett Brothers, Inc., Tuscarora Corporation, and Tuscarora Acquisition Company No. 6, Inc., Defendants,

and

Tuscarora Acquisition Company No. 7, Inc., Chilton Ellett, Allan C. Watkins, Trustee for the unsecured creditors of Ellett Brothers, Inc., Bancamerica Commercial Corporation, Eagle Oil & Development, Inc., and Leroy G. Bailey, Jr., and Robert D. Gorham, Jr., Additional Defendants.

No. C–C–85–0074–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Dec. 23, 1986.

See also, 112 F.R.D. 131.

1358

Gaston H. Gage, I. Faison Hicks, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., Jeffrey S. Hacker, Area Sr. Atty., FDIC, Dallas, Tex., John S. Gordon, Harley Blosser, Gordon & Gordon, Kansas City, Mo., for plaintiff.

Ray Adams, Overland Park, Kan., Philip D. Lambeth, Harkey, Fletcher & Lambeth, C. Richard Rayburn, Jr., Jim Smith, Moore, Van Allen, Allen & Thigpen, Edgar Love, III, George C. Covington, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., Sheila Janicke, David Schlee, Smith, Gill, Fisher & Butts, Kansas City, Mo., Harriet E. Styler, Salt Lake City, Utah, Michael Mahoney, Baker & Hostetler, Cleveland, Ohio, Rebecca L. Jackson, Baker & Hostetler, Washington, D.C., Stuart N. Bennett, Carl A. Eklund, Roath & Brega, Denver, Colo., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court upon various Motions of the parties. The Court heard arguments of counsel on December 16, 1986 at Charlotte, North Carolina.

**I. DEFENDANT ALLAN C. WATKINS' ("WATKINS") MOTION FOR SUMMARY JUDGMENT ON DERIVATIVE CLAIMS.**

Watkins contends that there is no genuine issue of material fact or law that the Plaintiff Federal Deposit Insurance Corporation ("FDIC") does not and cannot meet the requirement of Fed.R.Civ.P. 23.1, to fairly and adequately represent the interests of Presco or its shareholders. Watkins has filed a thorough Memorandum in support of his Motion and the Court has carefully reviewed it, as well as the FDIC's Memorandum in opposition. Watkins' counsel was unable to appear at the December 16 hearing; counsel for both parties presented no oral argument on this Motion, and the Court's consideration is based totally on the pleadings. Thus, Watkins seeks summary judgment against the FDIC on its derivative claims for corporate waste and mismanagement, fraudulent liquidation and dissolution, fraudulent transfer of control, unjust enrichment and violations of Rules 10(b) and 10b–5 of the securities laws. Further, Watkins argues that because the FDIC has no right to maintain a derivative action, it has no cause of action for a breach of fiduciary duty on the part of Watkins as an individual plaintiff since that cause of action belongs to Presco Industries, Inc. ("Presco") and must be brought as a derivative action. Consequently, Watkins contends the FDIC's derivative and individual claims against Watkins for alleged breach of fiduciary duty to Presco and/or the FDIC should be dismissed.

In support of his Motion, Watkins states that the FDIC's interests are "openly hostile" to Presco and its shareholders; that the FDIC has sued Presco's shareholder Preston Kerr, in its individual right; that the FDIC is engaged in other litigation with Presco's shareholder; that no Presco shareholder supports the FDIC's derivative actions; that the FDIC's personnel have no knowledge of Presco, its shareholders, or this case, which is in fact being controlled entirely by the FDIC's attorneys; and that the FDIC, as a "forced seller" of Presco's stock, no longer has an interest in Presco and lacks standing to sue derivatively.

■ The Court is of the opinion that the FDIC's derivative claims under Rule 23.1 are sufficient to survive Watkins' Motion. *FDIC v. Kerr*, No. 85–0074–P, at pp. 16–17

(W.D.N.C. June 13, 1985). Kerr owns 100 percent of the Presco stock; the FDIC holds a security interest as pledgee in 50 percent of that stock and as such, has been determined to be an equitable shareholder. The January 30 and 31, 1985 Presco asset sale resulted in the diminution in value of the pledged Presco shares, thus the FDIC suffered a loss as an equitable shareholder. An equitable owner of shares is entitled to maintain a derivative action, *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223 (10th Cir.1970), and a derivative action "may be brought by a shareholder or holder of beneficial interest in shares ..." of a corporation. N.C.Gen.Stat. § 55–65. *See also, Cannon v. Parker*, 152 F.2d 706 (5th Cir.1946); *Snyder v. Eagle Fruit Co.*, 75 F.2d 739 (8th Cir.1935) (pledgee may exercise same rights as a minority shareholder). The FDIC's individual claim does not preclude its derivative claim because of its alleged loss as an equitable shareholder and as a secured party for loans to Kerr. *See Howell v. Fisher*, 49 N.C.App. 488, 492, 272 S.E.2d 19 (1980) (shareholder may bring both individual and derivative claims if can allege loss peculiar to himself). The FDIC's forced seller status for purposes of pursuing securities laws violations does not deprive it of its equitable shareholder status as Watkins suggests. *See Smallwood v. Pearl Brewing Co.*, 489 F.2d 579 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974).

The Court further disagrees with Watkins' reliance upon the factors for determining adequate derivative representation as set out in *Davis v. Comed, Inc.*, 619 F.2d 588 (6th Cir.1980). That case may serve as a guide for derivative representation criteria, but it is by no means exclusive or exhaustive. In this case, it is obvious that no party other than the FDIC would bring suit to protect the interest and value of Presco. The arguments of other pending litigation, lack of knowledge on the part of FDIC personnel, lack of shareholder support and conflict of economic interest with Presco's shareholders simply beg the question of proper derivative standing in this particular case.

In conclusion, the Court believes Watkins is not entitled to summary judgment as a matter of law. The Court agrees with the contentions of the FDIC as fully set forth with legal authority in its Memorandum in opposition to Watkins' Motion.

## II. DEFENDANT TUSCARORA ACQUISITION COMPANY, NO. 7, INC.'S MOTION FOR RELIEF FOR FDIC'S FAILURE TO COMPLY WITH RULE 15(a) AND DEFENDANT BANCAMERICA COMMERCIAL CORPORATION'S MOTION TO STRIKE

FDIC filed its original Complaint in this action on January 31, 1985. On December 12, 1985, the FDIC filed its Second Amended Complaint. On June 13, 1986, this Court directed the FDIC to further amend its Complaint to (1) "more specifically reflect which Defendants allegedly did what with respect to the commission of the alleged predicate acts of mail fraud, wire fraud, and securities fraud;" (2) include a verification as required by Fed.R.Civ.P. 23.1; and (3) include allegations "why it made no effort to secure intra-corporate action" with respect to the shareholder derivative claim. The only aspect of the June 13 Order arguably related to the instant matter is the directive to state with more specificity the Defendants' roles in the commission of the predicate acts. To that end, it is helpful to consider the statements of this Court on page 10 of that Order.

The Second Amended Complaint does not set forth with particularity which Defendants used the mails or interstate wires, although it is hard to imagine how such a transaction could be carried out without the use of such interstate devices. Nor does the Second Amended Complaint set forth any facts which could form a basis for a violation of the Travel Act. The FDIC does claim with particularity that the Defendants conspired to conduct a pattern of racketeering activity through the affairs of the association in fact in that particularity under Fed.R.Civ.P. 9(b) requires time, place and context.

Under the circumstances of this case, and in light of the fact that considerable discovery is yet to be conducted, this Court cannot say that it appears beyond doubt that the FDIC will be unable to prove any set of facts *to support its RICO claim* against these Defendants. However, the FDIC should further amend its Complaint to reflect which Defendants did what with respect to the commissions of the alleged predicate acts of mail fraud, wire fraud, and securities fraud. There appears to be no set of facts which the FDIC can prove in support of its claim that the Defendants violated the Travel Act and that claim should be dismissed. Otherwise, the Court finds that the Defendants have been given notice of the alleged fraud sufficient to allow adequate responsive pleading and the RICO claims should not be dismissed.

[Emphasis added.]

In this matter, the following proposed amendments are in controversy:

(1) The Second Claim for Relief against Kerr, Watkins, Adams, Ellett, Bailey, BACC, TAC 6, TAC 7 and Gorham for civil conspiracy to commit corporate waste, etc., has been amended at Paragraph 49(v) to state that BACC knew it "was dealing with a fiduciary, Kerr, and knew it [the transfer of $1,715,000 from Presco] to be voidable. The payment was accomplished by means of the artifices and deceptions herein before alleged to the knowledge of BACC." The Second Claim for the first time seeks $1 million in punitive damages from BACC.

(2) The Third Claim for restitutionary relief is entirely new and is "an individual claim against Kerr, Watkins, Adams, Ellet, and Bailey as officers, directors, and/or a group of dominant shareholders acting in breach of their fiduciary duties ... and as an individual claim against Gorham, TAC 6 and TAC 7, and BACC as direct beneficiaries of the breach of said fiduciary duties to the harm of plaintiff's interests...."

(3) The Fourth Claim for relief now makes allegations of § 17(a) violations in addition to the previous allegations of Rule 10b–5 and § 10(b) violations of the Securities Acts of 1933 and 1934. This claim is new to BACC who had previously not been a party to the securities law violations. The Fourth Claim seeks damages of $1,144,070.88, plus $1 million in punitive damages.

(4) The Fifth Claim is a derivative claim for corporate waste and mismanagement, etc., and seeks $6.4 million damages plus $5 million in punitive damages. This claim is also new to BACC.

(5) The Seventh Claim, a derivative claim, also adds § 17(a) to the violations of securities laws allegations, and is also new to BACC. This claim seeks damages of $6.4 million and $5 million dollars in punitive damages.

(6) The Eight Claim adds BACC to the RICO claim and adds § 17(a) to the alleged predicate act violations of the securities laws. It seeks damages of $1,144,070.88, plus interest, trebled pursuant to the statute.

(7) The Ninth Claim is also new and alleges that Defendants aided and abetted the securities laws violations. BACC is also made a party to this claim. It seeks $1,144,070.88 in damages, plus interest, plus $1 million in punitive damages.

(8) The Tenth Claim is also new, and is the same as the Ninth Claim for aiding and abetting securities laws violations, except it is a derivative claim and seeks damages of $6.4 million and punitive damages of $5 million.

Defendant TAC 7 and BACC contend that the unauthorized amendments of the FDIC's Third Amended Complaint should be dismissed for its failure to comply with Fed.R.Civ.P. 15(a) requiring leave to amend.

TAC 7 objects to allegations in the FDIC's Third, Ninth, and Tenth Claims for relief as well as the addition of § 17(a) to all of the securities laws claims.

TAC 7 argues that the FDIC's reliance on previously unmentioned allegations is prejudicial. For instance, the discovery period for this case has expired and had TAC

7 known that it would have to defend against these new allegations, it contends that it would have approached discovery from a different perspective.

Further, Rule 10b–5 includes the element of scienter whereas § 17(a) does not, thus the FDIC's burden on its securities laws claims is lessened but TAC 7's is greater. With trial scheduled to commence in less than a month and the discovery period over, TAC 7 argues the prejudicial effect of these new allegations requires their dismissal.

TAC 7 also argues that the FDIC did not seek leave of Court as required under Rule 15(a), and exceeded the Court's Order of June 13, 1986 to amend the RICO claim to allege with more specificity the roles of each Defendant in the commission of the alleged predicate acts.

BACC argues that it would be severely prejudiced if the Court allowed the Third Amended Complaint to stand because it substantially enlarges the issues in the case as to BACC and greatly enlarges the damages sought against BACC. The FDIC for the first time alleges that BACC was the direct beneficiary of the newly alleged breaches of fiduciary duties of the Third Claim, that BACC is guilty of securities laws violations, aiding and abetting in securities laws violations, of RICO violations, mail fraud, wire fraud, and corporate waste and mismanagement. Further, the FDIC now seeks of BACC punitive damages from $1,000,000 to $5,000,000; treble damages and attorney's fees for RICO violations; and compensatory damages increased from $1,715,000 plus interest to $6,400,000.

BACC contends that the unauthorized amendments which add new parties to existing claims as well as to new claims will greatly complicate the January 12, 1987 trial of this case and deprives BACC of the opportunity to adduce additional evidence to refute the new allegations which it now faces. BACC argues that it is now too late for it to assert new discovery to determine the FDIC's basis for accusing BACC with intentional deception; and it is far too late for BACC to go back through 26 depositions which were taken in this case to conduct its discovery for a different lawsuit based on different theories and a five-fold increase in damages sought.

BACC also contends that the essential facts necessary for the Third Amended Complaint have been known to the FDIC since at least May 1986, if not longer, from the time of the Smolev (BACC's former counsel) deposition which was taken on May 27. The filing of the Third Amended Complaint at this time is unjustified and weighs heavily against allowing the FDIC leave to amend.

The FDIC argues that the new breach of fiduciary duty claim merely restates and clarifies the allegations of paragraph 52 of the Second Amended Complaint. This claim presents no surprise to Defendants nor should it have any dilatorious effect to their defense, according to the FDIC. The FDIC argues that the aiding and abetting claims likewise have no prejudicial effect since the elements of aiding and abetting do not differ from those of the underlying securities laws violations such that Defendants' discovery or defense is prejudiced. Further, the FDIC asserts that the predicate allegations which support the aiding and abetting claim were included in the Second Amended Complaint.

In addition, the FDIC points to the clear factual nexus between its new allegations and those of its two previous Complaints. All of the alleged actions arise out of the same transaction complained of initially. *See Grattan v. Burnett*, 710 F.2d 160 (4th Cir.1983).

With respect to the § 17(a) claim, the FDIC argues the addition of that claim to the 10b–5 allegations presents no surprise or prejudice to TAC 7's case because the elements of § 17(a) correspond with the elements of 10b–5 with the exception of the scienter requirement. The claims are normally pursued together wherever there is an implied right of action. *Johns Hopkins Univ. v. Hutton*, 488 F.2d 912 (4th Cir. 1973). The FDIC contends that the scienter requirement of § 17(a) is not material since Defendants have throughout discovery prepared their defense as to this

element. The FDIC attempts to bolster its arguments by contending that the addition of the § 17(a) claim and the aiding and abetting claims constitute predicate acts which support its RICO count; thus, these amendments are within the spirit of the Court's Order requiring more specificity in the predicate act allegations. The FDIC states that all these amendments were filed November 4, 1986 because of the Defendants' delayed responses to discovery.

For instance, on October 8 and 14, 1986, the FDIC took depositions of Herbers and Griffin (Kerr's former attorneys). Herbers testified that he made many telephone calls surrounding the Presco asset sale of January 30, 1985, and Griffin testified of threats by Kerr made threats to deter Horvitz from contacting Kerr's creditors.

Other discovery gained since the filing of the Second Amended Complaint led the FDIC to believe BACC was much more involved in the alleged fraudulent transaction than the FDIC originally appreciated. The FDIC now believes and alleges that BACC was Kerr's major creditor and exerted a great deal of influence over his financial goings on; that BACC had security interest in virtually all of Kerr's assets; that BACC was seeking payment in December, 1984 and January, 1985 for a $1 million loan of which Kerr was in default; that BACC had representatives at the January 1985 transaction and at negotiations preceding it; and that BACC's security included a second lien on the gross shares of Presco stock pledged to Republic Bank. The FDIC points with much emphasis to the May 23, 1985 deposition of Smolev (BACC's attorney) in which he testified that he called the FDIC on or January 24 or 25, 1985 and stated that the Presco *stock* was being sold and that the FDIC would soon receive a check for Kerr's debt secured by the 250,000 Presco shares. Smolev did not tell the FDIC who he was representing, but did state he had represented the FDIC on previous occasions. The FDIC contends it believed Smolev and was expecting payment for the Presco shares; the FDIC did not expect the *asset* sale of Presco which occurred shortly thereafter. The FDIC filed another Memorandum with the Court on December 19, 1986 in which it sets forth several instances of discovery which occurred after the June 13 Order. Based on this discovery, the FDIC believed that BACC knew that the $1.7 million payoff from Kerr was actually coming from the Presco sale, and that BACC in fact motivated the sale. Thus, the FDIC dramatically amended its claims against BACC to reflect BACC's actual role and to recover from BACC the increased damages for which it was liable.

The FDIC also asserts that the timing of its Third Amended Complaint is consistent not only with the discovery progress of this case but also with the Rule 11 duty of a pleader to investigate facts before pleading.

Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." This liberal policy does not mean that leave should always be granted, but only when "justice so requires." It is, however, a mandate of which the trial court must be particularly mindful. The United States Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) set forth the following general standards for resolving issues under Rule 15(a).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182, 83 S.Ct. at 230.

Among these factors, prejudice is probably the most important, 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1488, at 428 (1971), and the prejudicial effect to the opponent by granting leave to amend may be sufficient to deny

the amendment. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). *Compare Wall v. Chesapeake & Ohio Railway*, 339 F.2d 434 (4th Cir.1964) (absence of prejudice will normally warrant granting leave to amend). In determining whether the threat of prejudice is sufficient to deny leave, the Court should consider what effect the grant or denial of leave will have on both parties. The Court should inquire into the hardship to the movant if leave to amend is denied, the reasons for the movant's failure to plead the material earlier and the injustice resulting to the non-movant if leave is granted. 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil, supra,* at 429; *Scott v. Crescent Tool Co.*, 306 F.Supp. 884, 886 (N.D.Ga. 1969) (prejudice must be balanced).

■ The delay of the movant in seeking leave, without resulting prejudice or obvious dilatorious intent, does not warrant denial of leave, *id.* at 438, nor does proximity in time to trial, alone, constitute a sufficient basis to deny leave to amend. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503 (4th Cir.1986); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039 (4th Cir.1984); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir.1980); *Compare Woodson v. Fulton*, 614 F.2d 940 (4th Cir.1980) (unjustified delay on part of movant may constitute grounds to deny motion to amend). A motion for leave, however, should be made as soon as the necessity for altering the pleading becomes apparent because the risk of substantial prejudice increases with the passage of time. *Id.;* 6 C Wright & A. Miller, *Federal Practice and Procedure, supra.*

■ The Court is of the opinion that justice does not require leave for the Third Amended Complaint under Rule 15(a) and the principles set out in past decisions applying Rule 15(a). The Court believes the FDIC's reasons for delay in amending are insufficient without due cause, the prejudice to the Defendants if leave is allowed is too great, and the hardship to the FDIC if leave is denied is outweighed by the factors of delay and prejudice.

This action was initiated by a Complaint filed on January 31, 1985. A Second Amended Complaint was filed with leave of Court on December 12, 1985. Nearly two years after filing suit, the FDIC seeks to file another Amended Complaint which includes new causes of actions, additional claims, additional parties to claims and substantially increased damages. This comes shortly before a preemptorily set trial date of January 12, 1987 and after several trial continuances, after several discovery extensions, after 26 depositions, after numerous documents have been exchanged, after numerous interrogatories have been filed and answered, after numerous preliminary motions under Rules 12 and 56 have been heard and decided and after the (final) discovery period has expired.

The new amendments will require the gathering and analysis of more facts, especially with respect to BACC. Although these new allegations arise out the same transaction, they present different questions of which the Defendants have not had an opportunity to adequately analyze for purposes of discovery or for preparation of the upcoming trial. The Court concedes that one important aspect of the FDIC's case, the alleged securities laws violations, presented novel and complicated issues of which the Defendants may have expected to be dismissed altogether on their Motions to dismiss. The addition of the aiding and abetting claims and the § 17(a) claims could have reasonably resulted in surprise to the Defendants, particularly in light of the lapse of time since the Second Amended Complaint.

An equally important issue of delay which greatly concerns the Court is the FDIC's asserted reasons for waiting until November 4, 1986 to file its Third Amended Complaint. The FDIC has argued that its delay is due to its difficulty in obtaining discovery from Defendants, and that the timing of its amendments are consistent with Rule 11 and within the meaning of the June 13, 1986 Order. The Court believes the FDIC's arguments are untenable.

The additions of the aiding and abetting claims and the § 17(a) claims do not depend on any new facts discovered since the filing of the Second Amended Complaint. These charges do not at all appear to be motivated by the June 13 Order. That Order clearly directs the FDIC to amend to more specifically reflect the respective roles of the Defendants in the commission of alleged predicate acts of mail fraud, wire fraud and securities fraud. The reason for the Order was to allow the FDIC to plead facts *in support of its RICO claim*, and was in response to Defendant's Motions to dismiss the RICO claim. The FDIC now strains this Court's directive in order to allege more legal claims and expects the Court to accept these new legal claims on the ground that they constitute more predicate acts. The FDIC also argues that it understood the June 13 Order to allow only one more amendment. The Order does not at all suggests that the FDIC was precluded from seeking further leave to amend to state additional claims or add new parties to exiting claims. The FDIC should have filed such a Motion when it appeared to it that grounds existed for such claims. At least, the FDIC could have noticed the Defendants that it intended to add new claims and new parties to existing claims so that the Defendants could have conducted their discovery accordingly. The FDIC had more than sufficient opportunities to state its new claims but failed to do so until the eleventh hour; this delay certainly does not support the contention that "justice requires" leave to amend. "[T]he time must arrive at some stage of every litigation when the plaintiff must be required to stand upon the allegations he is asserting...." *Bernstein v. N.V. Nederlandshe-Amerikaansche*, 79 F.Supp. 38, 42 (D.C.N.Y.1948).

The facts which the FDIC assert at its basis for adding its new claims and new parties to additional claims, especially concerning BACC, have, for the most part, been known since May of 1986. If the Smolev deposition was so crucial to the FDIC's case against BACC, then it could have sought leave shortly after Smolev's deposition. The October depositions of Herbers and Griffin add little support to the increased claims against BACC. Furthermore, the other discovery as set forth in the FDIC's most recent Memorandum as occurring after the June 13 Order does not appear to have been necessary for finding good grounds to seek amendments against BACC. While that discovery may have been helpful to the FDIC, it does not show any new facts after Smolev's deposition which were necessary for amendment. The June 13 Order allows the FDIC to amend its allegations of predicate acts in support of the RICO claim, including any new information gained through October. But any claims and allegations which go beyond the predicate acts of the RICO claim shall not be allowed since the factual support for those amendments obviously existed even before the June 13 Order.

With respect to prejudice, it appears to the Court that the injustice resulting upon the Defendants if leave is granted would be severe, particularly with respect to BACC. As mentioned previously, the Defendants could reasonably be expected to seek more discovery from a new perspective. Defendants have already incurred much expense to this end. The trial of this case has been continued too many times already and the Court has noticed the parties that it will not continue the trial again. In fact, the Court has arranged its entire January 1987 Civil Jury Calendar around this case. The interest of justice simply would not be served by forcing the Defendants to scurry for more facts and engage in further analysis, and possibly engage in more preliminary motions, in the short time remaining before trial. The Tuscarora Defendants have already filed cross-claims and counter-claims to the FDIC's Third Amended Complaint, which alone, could produce a whole new round of pleadings. And BACC, who has not answered yet, could reasonably be expected to file dispositive preliminary motions on numerous issues of which it has not until now had to defend against. In light of the history of this case, such activity on the part of the Defendants is not at all unlikely. Even if the Court did continue the trial, which it will not, the Defendants'

right to a speedy and inexpensive trial would be further prejudiced.

The Court's conclusion is further supported by the relatively slight hardship the FDIC might suffer from denial of leave. There are ample allegations and claims from which a jury could afford sufficient relief to the FDIC. Conversely, without these claims, it does not appear that the FDIC is at all precluded from obtaining the full relief sought.

The need for additional preparation and the complexity likely to arise from allowing the Third Amended Complaint at this time would result in substantial prejudice to the Defendants; this prejudice coupled with the FDIC's undue delay in asserting these amendments and the lack of substantial hardship the FDIC would suffer from a denial leads the Court to believe that the interest justice would not be served by granting leave. The Court will, however, allow those amendments of the Third Amended Complaint that are responsive to its directive to more specifically plead the Defendants' roles in the commission of the predicate acts in support of its RICO claim.

### III. TUSCARORA'S MOTION TO DISMISS

The Defendant Tuscarora Corporation ("Tuscarora") argues that the FDIC has failed to state a claim against it upon which relief can be granted. Tuscarora states that the FDIC does not include it in any substantive allegations or in the prayers for relief and there is no justification for retaining it as a necessary party to this lawsuit.

The Court disagrees with Tuscarora's arguments. It appears to the Court that Tuscarora is a necessary party to this lawsuit under Rule 19(a) in that is absence could result in incomplete relief for the FDIC. Tuscarora is wholly owned and operated by Defendant Robert Gorham. Tuscarora owns TAC 6, and TAC 6 owns TAC 7. The FDIC alleges that Tuscarora played a significant part in the negotiations and ultimate transaction which resulted in fraud. [Third Amended Complaint at

¶ 98(b)(iii); predicate act of RICO claim which the Court will allow amended.]

Tuscarora is related so closely with Gorham, TAC 6 and TAC 7, that this Court will not dismiss it as party at this time. Under Rule 54(c), the Court may grant relief to a party so entitled, even if such party has not demanded such relief in his pleadings. Consequently, this Court refuses to dismiss Tuscarora Corporation.

### IV. FDIC'S MOTIONS FOR SUMMARY AGAINST KERR AND PRESCO ON THEIR COUNTERCLAIMS

The FDIC argues that summary judgment should be entered in Counts I, II and III of Kerr's and Presco's Counterclaims. Count I seeks an accounting and affirmative credit in connection with five loan transactions with Republic Bank for which Kerr was either a maker or guarantor. Count II seeks an accounting and an affirmative credit to Presco and Kerr, individually, in connection with the receipt by Republic Bank of a $6.9 million wire transfer for Presco's account on September 30, 1983. Count III seeks damages for an alleged wrongful disaffirmance of a Republic Bank letter of credit which had been previously issued on behalf of Arthur Brant's, Inc. ("ABI") for the benefit of Doretha Bryant ("Bryant"). The letter of credit served as security to ensure payment to Bryant by ABI under a license agreement. Kerr was a party to the underlying license agreement as a guarantor of the annual payments of ABI to Bryant.

For the reasons set forth below, the Court is of the opinion that the FDIC is entitled to summary judgment on Defendants' Counterclaims.

R.S.Mo. § 361.300 provides the exclusive procedures for liquidating the assets of an insolvent state bank, accounting and providing for the payment of claims against the insolvent bank, and the winding up of its affairs. *Commerce Trust Company v. Farmers' Exchange Bank of Gallatin*, 332 Mo. 979, 61 S.W.2d 928 (1933). Republic Bank declared insolvency on June 18, 1984, and on that same date, the FDIC was ap-

pointed its liquidating agent. The creditors and shareholders of Republic Bank look to the liquidating agent, FDIC, as their representative in obtaining their respective shares of its assets in a prompt manner.

Chapter 361 of the Missouri statutes requires the dismissal of all pending actions against the insolvent bank; requires all claimants to present proofs of their claims within four months of the posting notice to creditors; prohibits the acceptance of any claims after the claims period runs; requires that any suit on a claim to be brought within 60 days after the last date for filing claims and that the plaintiff allege and prove that his claim was timely filed and rejected. With respect to the word "claim," the Missouri Supreme Court has stated the statute requires anyone "who has a right to require the fulfillment of an obligation or contract" to file a proof of claim to preserve that right or expectancy. *Commerce Trust Company, supra*, 61 S.W.2d at 931.

■ Defendants have failed to plead any of the jurisdictional prerequisites for asserting a claim against the liquidating agent of an insolvent Missouri state bank under R.S.Mo. Chap. 361. FDIC published its notice to creditors that December 8, 1984, was the last date for filing proofs of claims against the liquidating agent. Defendants did not file any proofs of claim.

■ An action for accounting is an action in equity and the plaintiff must state a cause of action based upon some known and established equitable ground. *Weltscheff v. Medical Center of Independence*, 604 S.W.2d 796 (Mo.App.1980). Further, Defendants failed to plead the minimum equitable grounds for obtaining a judicial accounting, as requested in Counts I and II. There is no evidence that the FDIC does not stand in a trust or fiduciary relationship to Kerr with respect to his loan obligations. And Defendants' remedies at law under Chap. 361 were adequate if they had exercised them in a timely fashion.

■ Count III of Kerr's Counterclaims should likewise be dismissed because Kerr was not a party to the letter of credit issued by Republic Bank on March 7, 1984

on the account of ABI and for the benefit of Bryant. Kerr asserts that the FDIC's failure to carry out the unfulfilled obligations under Republic Bank's letter of credit resulted in consequential damages to him.

Kerr, however, failed to plead the jurisdictional prerequisites for asserting a claim against the liquidating agent of an insolvent state bank under Chap. 361. And Kerr has failed to plead that the FDIC entered into any contract or assumed the unfulfilled obligations of the Republic Bank letter of credit.

There is no evidence that the FDIC has ever entered into any contract with Bryant, ABI, Kerr or any other party obligating itself to perform the obligations of the Republic Bank letter of credit. The FDIC is, by statute, Republic Bank's successor as "liquidating agent," and there is no evidence that it has ever asserted that it was a "successor" to Republic Bank's unfulfilled obligations. That is why the FDIC accepted claims from potential creditors up to December 8, 1984, to clear up any possible encumberments on assets. The Defendants' own evidence shows that the FDIC is Republic Bank's successor as liquidating agent. [FDIC letter of June 25, 1984, attached to Defendants' Memorandum in Opposition.]

Kerr failed to plead that the FDIC had any statutory duty compelling it to adopt and make full payment under Bryant's letter of credit. To the contrary, the FDIC has a statutory obligation to conserve, not spend, assets. R.S.Mo. § 361.470 (FDIC "is authorized … to do all acts necessary to make such expenditures as in its judgment are necessary to conserve its assets and business.").

■ Even if the FDIC was under a statutory duty to assume the obligations under the Republic Bank letter of credit, then the doctrine of sovereign immunity bars suit against the FDIC for a non-negligent breach of statutory duty. *FDIC v. Citizens Bank & Trust Company*, 592 F.2d 364 (7th Cir.1979) (FDIC immune from suit where failure to perform statutory obli-

gation is due to misinterpretation of the statute and not negligence).

In *FDIC v. Citizens Bank & Trust Company*, the court held that liability for breach of a duty imposed by statute or case law is in tort. *Id.* at 367. The FDIC is a "federal agency" for purposes of the Federal Torts Claims Act and Kerr failed to plead jurisdiction under that Act as required. Kerr failed to plead facts constituting compliance with the Federal Torts Claims Act; failed to sue in the name of the United States; and failed to meet the requirements for administrative review under the Act. *See generally, FDIC v. TWT Exploration Company, Inc.*, 626 F.Supp. 149 (W.D.Okl.1985).

In addition, the Court agrees with the FDIC that the consequential damages alleged by Kerr in Count III cannot form the basis for a judgment against the FDIC. The alleged damages all relate to the underlying contract between Bryant and ABI. The FDIC allegedly caused the termination of that contract when it noticed Bryant on June 25, 1984 that it would not affirm Republic Bank's obligation under the letter of credit, consequently causing personal damages to Kerr as guarantor. Kerr, however, had no stock in ABI on the date of the alleged wrongful disaffirmance or breach; he did not acquire such stock until October 1, 1985, over two years after the FDIC allegedly disaffirmed the letter of credit. In addition to this, ABI had no track record of profits on which to reasonably base damages.

Thus, summary judgment should be entered in favor of the FDIC on Kerr's and Presco's Counterclaims, Counts I, II, and III.

## V. FDIC'S MOTION FOR SUMMARY JUDGMENT ON ITS FIRST CLAIM FOR RELIEF AGAINST KERR

There is no dispute that Kerr is in default on the following notes:

(1) $400,000 Promissory Note, January 10, 1984;

(2) $44,950 Promissory Note, January 20, 1984;

(3) $315,000 Guaranty of Note of Eagle Oil, April 5, 1984;

(4) $75,000 Guaranty of Note of Great Western, April 10, 1984.

There is also no dispute that Kerr either personally executed these Notes or personally guaranteed payment of said Notes in favor of Republic Bank. All of the Notes, plus interest, are in default and are owing. The FDIC claims that the balance due is $830,743.47 plus interest of $313,327.41 as of October 2, 1986, totalling $1,144,070.88 plus interest from October 2, 1986.

Kerr's only defense to the FDIC's Motion in that Count II of his Counterclaims requests an accounting and appropriate credit and setoffs involving the wire transfer of $1,245,000 to Republic Bank. Kerr argues that on September 30, 1983, Kerr and Presco entered into a financing arrangement involving the issuance of bonds from South Carolina. Republic Bank had arranged for the financing for Presco's purchase of Ellett Brothers, Inc. for $6.9 million. When the bonds were issued, funds were transferred by wire to Republic Bank; Republic Bank and other loan participants were paid off at this time. Approximately $1,245,000, however, was apparently not properly credited to Kerr or Kerr related accounts with Republic Bank. Neither Republic Bank nor the FDIC has rendered a satisfactory accounting of this money, according to Kerr. Thus, there exists a genuine material issue of fact as to whether Kerr has any amount of indebtedness to the FDIC.

██ The Court believes Kerr's arguments are untenable. Summary judgment on Count II of his Counterclaim is being entered simultaneously with summary judgment on this matter. Kerr has no right to an accounting or setoff as he asserts and, therefore, his arguments fail as a matter of law.

## VI. BACC'S MOTION IN LIMINE REGARDING JOHN GORDON AND MOTION TO COMPEL UNDER RULE 37(a)

With respect to BACC's Motion to prohibit the testimony of John Gordon or order

his withdrawal from representation of the FDIC, the Court is of the opinion that the same should be denied. The Court has not changed its position on this matter since its Order of August 15, 1986.

■ With respect to BACC's Motion to identify the bank examiner who prepared the "Asset Subject to Adverse Classification" memorandum, the Court is of the opinion that the same should be granted.

At the 30b(b)(6) deposition of the FDIC on June 25, 1986, deponent Charles Aldrich was questioned extensively about who prepared this memorandum. BACC also requested this information in its Motion to compel on July 23, 1986. BACC contends that it, as well as the other Defendants, have not been able to secure any information about the memorandum, including who prepared it, when and under what circumstances. Such information is important because it shows that the Republic Bank and the FDIC knew that Kerr's interests were in a precarious condition and that Presco was to be sold and that BACC was to be paid out of the proceeds.

BACC learned only recently that the FDIC has identified and located the bank examiner. [FDIC's amended Response to Watkins' First Request for Admissions, dated November 20, 1986.] Thus, BACC requests the identification of the bank examiner and that it be permitted to depose him to properly prepare for trial.

The Court believes the FDIC's objections to producing the bank examiner based upon alternative means and irrelevancy are without merit. The FDIC should, therefore, make available for deposition the bank examiner who prepared the "Assets Subject to Adverse Classification" memorandum in accordance with this Court's scheduling Order issued December 17, 1986.

IT IS, THEREFORE, ORDERED that:

(1) Watkins' Motion for summary judgment is DENIED;

(2) TAC 7's Motion for relief for FDIC's failure to comply with Rule 15(a) and BACC's Motion to strike the FDIC's Third Amended Complaint are GRANTED; but only with respect to those portions of the Third Amended Complaint that go beyond allegations of predicate acts to support the RICO claim. And the FDIC is directed to file within seven (7) days of the issuance of this Order a Third Amended Complaint which includes amendments only to the predicate act allegations to support its RICO claim;

(3) Tuscarora's Motion to dismiss is DENIED;

(4) The FDIC's Motion for summary judgment on Defendants Kerr's and Presco's Counterclaims, Counts I, II, and III is GRANTED and the same are hereby dismissed with prejudice;

(5) The FDIC's Motion for summary judgment against Kerr on its First Claim for Relief is GRANTED; and the Clerk is directed to enter judgment in accordance with Rule 58 on the Counts in paragraphs (4) and (5) of this Order; and

(6) BACC's Motion In Limine Regarding John Gordon is DENIED; and BACC's Motion to compel identification of the bank examiner and allow his deposition is GRANTED.